UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CORDIUS TRUST, | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 04-MBD-10267 |
| - against - | : | |
| | : | |
| DONALD D. KUMMERFELD, | : | APRIL 12, 2005 |
| | : | |
| Defendant. | : | |
| -------------------------------------------------------- | X | |

**CORDIUS TRUST'S OPPOSITION TO
DONALD KUMMERFELD'S MOTION FOR STAY
PENDING APPEAL WITHOUT BOND**

Cordius Trust respectfully opposes Donald Kummerfeld's third attempt to obtain a stay

without bond pending appeal. Mr. Kummerfeld cannot satisfy the standard for a stay now any

more than he could when his similar motions were denied in the Southern District of New York

and at the Court of Appeals for the Second Circuit. As Judge Denise Cote of the Southern

District has concluded, this action "concerns a fraud and it continues to concern fraudulent

activity, failure to pay legal obligations, various maneuvers to avoid legal obligations. There is a

strong public interest here that this judgment and the underlying judgments be enforced and that

the requirements of the law be met." Therefore, the present motion should be denied.

## **FACTUAL AND PROCEDURAL BACKGROUND OF THIS ACTION**

As the United States District Court for the Southern District of New York has concluded, this case arose from the fraud that Kummerfeld Associates, Inc. ("KAI"), a two-person company owned and operated by Elizabeth and Donald Kummerfeld, perpetrated on Cordius Trust. That fraud started when KAI and Elizabeth Kummerfeld persuaded Cordius Trust to invest in a "high-yield investment program" that KAI had allegedly developed. Under this "program," which KAI described in writing, Cordius Trust was to have recovered its initial investment capital plus 40 to 50 percent at the end of 30 days. KAI's agreement further stated that the profit distribution during two subsequent phases, each 15 weeks long, would be 1 percent of the total cash investment per day.[1] (Affidavit of Bradford S. Babbitt In Opposition to Rule 62(f) Motion For Stay, April 12, 2005 (hereinafter "Babbitt Affidavit"), Exhibit 4 at 3-4.)

Cordius Trust provided KAI with $400,000 in accordance with the terms of the agreement, in March, 1997. In June of that year, KAI reported that Cordius Trust's investment of $400,000 with 200 percent profit would be released in "a week or so." In March of 1998, KAI reported that within 2 weeks Cordius Trust would receive a return of principal plus 240 percent profit. No money was ever forthcoming. (Babbitt Affidavit, Exhibit 4, at 4.)

Cordius Trust asserted claims of fraud and securities violations against KAI and Elizabeth Kummerfeld in discussions with her in late 1997 and early 1998. Kummerfeld settled those claims on behalf of herself and KAI by executing a promissory note.[2] No payments on the

---

[1]    Mr. Kummerfeld ridicules the "astronomical" returns that his company offered, as if Cordius Trust was in some way responsible for the fraudulent enticements offered in writing by his company. The fact that his company defrauded Cordius Trust has been conclusively established by the Southern District of New York.

[2]    Donald Kummerfeld's present claim that Cordius Trust had "pressured Mrs. Kummerfeld" into signing the promissory note is identical to the second affirmative defense asserted by KAI in the original litigation, which was dismissed by the District Court after trial. (Babbitt Affidavit, Exhibit 1, at 85-86.) The District Court's judgment was affirmed by the Second Circuit on appeal. (Babbitt Affidavit, Exhibits 2, 3.) Thus, the claim that Elizabeth Kummerfeld was in some way coerced or pressured has been conclusively disproved and is not subject to collateral attack. Moreover, Mr. Kummerfeld's suggestion that his wife was in some way mentally compromised when she

2

note were ever made.[3]  At trial, the United States District Court, Denise Cote, J., found that KAI

and Kummerfeld had breached their obligations under the note.  The court dismissed the

defendants' affirmative defenses, and entered judgment in favor of Cordius Trust for the full

amount of the note, plus prejudgment and postjudgment interest, and attorneys' fees.  (Babbitt

Affidavit, Exhibit 4, at 4.)

The district court also dismissed the defendants' counterclaims, including their claim of

unconscionability, as unsupported by any evidence.  In doing so, the court observed:

> The only unconscionability that the Court can find in connection with this
> transaction is in connection with the underlying transaction and the
> defendants' actions.  The defendants' promised investment program indicates
> to this Court an effort to defraud the plaintiff.  The failure to pay and the false
> statements contained in the letters prepared by the defendant and submitted to
> the plaintiff and which have been received into evidence during the course of
> this trial show a course of conduct to further victimize the plaintiff and
> deprive it of monies to which it was lawfully entitled.

(Babbitt Affidavit, Exhibit 4, at 4.)

The United States Court of Appeals for the Second Circuit affirmed the judgment in a

summary order dated November 30, 2000.[4]  *Cordius Trust v. Kummerfeld Assoc., Inc.*, 242 F.3d

264 (Table), 2000 WL 1775516 (2d Cir. Jan. 2, 2001); (Babbitt Affidavit, Exhibit 3).  On

February 20, 2001, Cordius served Ms. Kummerfeld and KAI with a Restraining Notice to

Judgment Debtor, pursuant to New York Civil Practice Law and Rules section 5222(b).  No

payments have been made on the judgment.  (Babbitt Affidavit, Exhibit 4, at 4-5.)

---

defrauded Cordius Trust is pure conjecture and is undermined by her conviction in federal court of wire fraud based
on her involvement in a fraudulent investment program identical to the program through which KAI defrauded
Cordius Trust.  *United States v. Elizabeth Miller Kummerfeld et al.*, docket number 00 CR 49 (S.D.N.Y.) (Kimba
Wood, J.)

[3]      Mr. Kummerfeld's motion suggests that Cordius Trust somehow breached an agreement by filing suit after
execution of the promissory note.  Mr. Kummerfeld glosses over the fact, however, that Cordius Trust only
commenced suit after his company defaulted on the note by making none of the promised payments.

[4]      The mandate issued on January 2, 2001.

On March 25, 2003, Cordius Trust moved pursuant to Federal Rule of Civil Procedure 69 for the issuance of a writ of execution and turnover order piercing the corporate veil of KAI in order to render MR. Kummerfeld's assets amenable to attachment. At the same time, Cordius submitted documentary evidence in support of its motion. Donald Kummerfeld opposed the motion with documentary submissions and moved to dismiss the motion on several procedural grounds. On February 19, 2004, Magistrate Judge Ronald Ellis, to whom the matter had been referred, issued a Report and Recommendation recommending that Mr. Kummerfeld's motion to dismiss be denied and Cordius's motion to pierce the corporate veil be granted. (Babbitt Affidavit, Exhibit 4, at 2-3.) After Donald Kummerfeld objected to the Report and Recommendation, the district court, Denise Cote, J., adopted the recommendations by denying the motion to dismiss and granting the motion to pierce KAI's corporate veil. (Babbitt Affidavit, Exhibit 4, at 23.) Judgment entered against Mr. Kummerfeld on April 30, 2004, from which he appealed. (Babbitt Affidavit, Exhibit 5.) That appeal remains pending.

## PROCEDURAL HISTORY TO THE PRESENT MOTION

Donald Kummerfeld moved for a stay of execution without bond on May 11, 2004, in the United States District Court for the Southern District of New York. After a hearing on May 19, the court, Denise Cote, J., granted a stay, on the condition that Mr. Kummerfeld place his most significant asset – beach-front property on Cape Cod that has been repeatedly appraised at more than $1.5 million – in escrow by May 28. Judge Cote further ruled that if Mr. Kummerfeld refused to escrow the property then the stay would end on June 2. The district court based that ruling on the following findings: (1) Mr. Kummerfeld would be unlikely to succeed on the merits of his appeal; (2) Mr. Kummerfeld had failed to show that he would be irreparably injured in the absence of a stay; (3) without a stay there is a risk to Cordius Trust that Mr. Kummerfeld's assets

4

will be placed beyond Cordius Trust's reach; and (4) there is a "strong public interest here that this judgment and the underlying judgments be enforced and that the requirements of the law be met." (Transcript of hearing, May 19, 2004, attached to Donald Kummerfeld's March 25, 2005 Memorandum In Support of Rule 62 Motion for To Stay Enforcement Of Judgment as Exhibit C, at 22-23 (hereinafter "Transcript").) Judge Cote issued a written order consistent with her findings on the record later that day. (Exhibit B to Donald Kummerfeld's March 25, 2005 Memorandum In Support of Rule 62 Motion for To Stay Enforcement Of Judgment .)

Mr. Kummerfeld subsequently acknowledged, in an affidavit filed with the United States Court of Appeals for the Second Circuit dated June 1, that he refused to comply with Judge Cote's condition by placing the property in escrow. Instead, he moved for identical relief in the Court of Appeals for the Second Circuit. That court unanimously denied his motion on July 15, 2004. (Exhibit D to Donald Kummerfeld's March 25, 2005 Memorandum In Support of Rule 62 Motion for To Stay Enforcement Of Judgment.)

On July 16, 2004, Cordius Trust moved for permission of the District Court for the Southern District of New York to register its judgment in the District of Massachusetts pursuant to 28 U.S.C. § 1963. Permission of the court was required because the appeal remains pending. The district court granted that permission on July 30, 2004. Cordius Trust thereafter registered its judgment in the District of Massachusetts and commenced execution proceedings with regard to the Brewster property of Donald and Elizabeth Kummerfeld.

## ARGUMENT

### I.   THIS COURT SHOULD DECLINE TO SECOND GUESS DISTRICT JUDGE DENISE COTE AND THE COURT OF APPEALS FOR THE SECOND CIRCUIT

Donald Kummerfeld asks this Court to grant what four other federal judges have already denied: District Judge Cote considered the same arguments in favor of a stay before concluding

that such relief was not appropriate in this case.  Subsequently, a three judge panel of the Court

of Appeals for the Second Circuit considered these same arguments and unanimously denied Mr.

Kummerfeld a stay pending appeal.

        The courts that have already ruled on this issue were closer to and more familiar with the

facts and the equities in the case.  Judge Cote heard the original trial in which KAI and Elizabeth

Kummerfeld were found liable.  Judge Cote also considered the motion to pierce KAI's

corporate veil and was the judge who concluded that it was "necessary to pierce the corporate

veil of KAI and render Mr. Kummerfeld's assets amendable [sic] to attachment in order to

enforce this Court's prior judgment and to achieve equity in this matter." (Babbitt Affidavit,

Exhibit 4, at 23.)  The Southern District also evaluated whether to grant Cordius Trust

permission pursuant to 28 U.S.C. § 1963 to register its judgment in the District of Massachusetts

notwithstanding the fact that the appeal remained pending and over the objection of Donald

Kummerfeld.  Similarly, the Court of Appeals for the Second Circuit had already affirmed the

judgment of the District Court against Donald Kummerfeld's wife and his company when it

denied his motion for a stay.   Having failed to persuade the courts that were most familiar with

the matter, Mr. Kummerfeld now petitions this Court for the same relief.

        Mr. Kummerfeld's suggestion that Judge Cote never considered whether Cordius Trust

should be permitted to proceed with its execution efforts in Massachusetts is unsupported by the

facts.  Judge Cote expressly considered whether Cordius Trust should be allowed to execute on

its judgment when she offered Mr. Kummerfeld a stay pending appeal on the condition that he

place his Brewster property beyond his reach.  The issue arose again later when Donald

Kummerfeld's counsel argued against permitting Cordius Trust to register its judgment in

Massachusetts on the ground that Cordius Trust would then be "one step closer" to executing on

6

the property. Notwithstanding that opposition, the motion to register Cordius Trust's judgment

in Massachusetts was granted. Thus, the Southern District has already ruled on the precise

question presented to this Court – whether Cordius Trust should be permitted to execute on the

Kummerfeld's property pending appeal – and has ruled in favor of Cordius Trust.

The Court should decline Mr. Kummerfeld's invitation to second guess District Judge

Cote and the Court of Appeals for the Second Circuit. Those courts have already addressed the

very question that he presents to this Court and his attempt to evade their rulings should not be

rewarded.

## II.    MR. KUMMERFELD FAILS TO SATISFY THE LEGAL STANDARD REQUIRED TO STAY ENFORCEMENT PROCEEDINGS PENDING APPEAL WITHOUT A BOND

Donald Kummerfeld relies on Federal Rule of Civil Procedure 62(f) in his latest attempt

to obtain a stay pending appeal. While that provision adopts state substantive law as to when a

stay may be granted, the procedure for obtaining such a stay is determined by federal procedural

law. *See Whitehead v. Food Max of Miss., Inc.*, 277 F.3d 791, 794-95 (5th Cir. 2002). Rule 62(f)

does not serve to automatically stay the execution of a judgment, even in a case in which the

state law would have provided for an automatic stay. *Id.;* 11 Charles A. Wright et al., *Federal*

*Practice and Procedure,* § 2907 (2d ed. 1995). Rather, such relief may be obtained only by way

of a motion for stay. *Whitehead*, 277 F.3d at 795. Motions seeking a stay of execution of a

registered judgment under Rule 62(f) are addressed to the sound discretion of the district court.

*United States v. Home Indemnity Co.*, 549 F.2d 10, 14 (7th Cir. 1977).

In general, the granting of any stay pending appeal requires the entering of a supersedeas

bond that "protects an appellee from the risks associated with delaying enforcement of the

judgment during the pendency of an appeal." *Palazzetti Import/Export, Inc. v. Morson*, 2002

WL 562654, at *3 (S.D.N.Y. 2002). "The burden is on the moving party to 'objectively demonstrate' the reasons why the court should 'depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional money judgment....'" *Teacher's Ins. and Annuity Assoc. v. Ormesa Geothermal*, 1991 WL 254573, at *3 (S.D.N.Y. 1991) (quoting *Poplar Grove, etc. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1191 (5th Cir. 1979)). Thus, to obtain a stay in this case, Mr. Kummerfeld must objectively demonstrate (1) that Mr. Kummerfeld is likely to prevail on the merits of his appeal, (2) that Mr. Kummerfeld will be irreparably injured absent a stay; (3) that the issuance of the stay will not substantially harm Cordius Trust, and (4) that the public interest supports granting a stay. *See Morgan Guaranty Trust Co. v. Republic of Palau*, 702 F.Supp. 60, 65 (S.D.N.Y. 1988) (reciting elements for stay without bond pending appeal). Mr. Kummerfeld cannot meet this burden.

### a.    Mr. Kummerfeld is Unlikely to Prevail on the Merits of His Appeal

Donald Kummerfeld is unlikely to persuade the United States Court Of Appeals For The Second Circuit that the district court erred in denying his motion to dismiss and in granting Cordius Trust's motion for a writ of execution and turnover order piercing the corporate veil of Kummerfeld Associates, Inc. ("KAI").

### 1.    Mr. Kummerfeld's Motion to Dismiss for Failure to State a Claim was Properly Denied

On appeal, Mr. Kummerfeld argues that the district court erred in denying his motion to dismiss. In that motion, Donald Kummerfeld claimed that Cordius Trust had failed to allege that he exercised dominion and control over KAI sufficient to pierce the corporate veil. The district court found that Cordius Trust's petition alleged that it won a judgment against KAI in March 2000, which was affirmed by this Court in November of that year. (Babbitt Affidavit, Exhibit 4, at 13.) Cordius Trust further alleged that Mr. Kummerfeld was chairman and

treasurer from KAI's founding and remains in that position, that he loaned KAI $400,000 in 2000 and roughly that much again in 2001 and that he was reimbursed for expenses incurred in his capacity as chairman in 2000 and 2001.  Finally, Cordius Trust alleged that KAI had made no payments in satisfaction of the judgment.  In light of these allegations, the district court correctly concluded that Cordius Trust had sufficiently alleged that Mr. Kummerfeld had exercised dominion and control over KAI when it failed to pay the judgment owed to Cordius Trust.  (Babbitt Affidavit, Exhibit 4, at 14.)

Mr. Kummerfeld also based his motion to dismiss on his claim that he had no role in his wife's fraudulent activities towards Cordius Trust, which caused his wife to execute the promissory note on which Cordius Trust won the original judgment.  As the district court noted, however, Mr. Kummerfeld was alleged to have wronged Cordius Trust by failing to cause KAI to satisfy the judgment.  The district court found that Cordius Trust had alleged that judgment entered and was affirmed in 2000, that Mr. Kummerfeld knew of the action and the judgment and that Mr. Kummerfeld continued to act and chairman and to fund KAI after the judgment.  On these allegations, the district court correctly concluded that Cordius Trust had sufficiently alleged that Mr. Kummerfeld had dominated KAI to perpetrate a wrong against Cordius Trust.  (Babbitt Affidavit, Exhibit 4, at 14.)  Accordingly, the district court properly denied the motion to dismiss and that ruling is unlikely to be reversed on appeal.

## 2.    The District Court Correctly Granted Cordius Trust's Motion For A Writ Of Execution and Turnover Order

Mr. Kummerfeld also claims, on appeal, that the district court erroneously granted Cordius Trust's motion for a writ of execution and turnover order.  In granting that motion, the district court concluded that Donald Kummerfeld had dominated KAI and that he used his domination to commit a wrong by failing to satisfy the judgment, thereby injuring Cordius Trust.

9

Donald Kummerfeld failed to raise genuine issues of material fact with regard to any of the factors that informed these two elements. As a result, the district court properly granted Cordius Trust's motion for a writ of execution and turnover order.

The district court accurately recited the factors considered in evaluating whether Donald Kummerfeld dominated KAI. (Babbitt Affidavit, Exhibit 4, at 16-17.) Considering those factors in this case, Judge Cote concluded that KAI had failed to observe corporate formalities, as evidenced by Mr. Kummerfeld's having been unaware if there had ever been a shareholder meeting or meeting of the board of directors upon KAI's formation and that that no minutes or official records were kept of any board of director's meetings to show that these meeting ever actually occurred. Mr. Kummerfeld's claim that KAI was a functioning company did not raise a material issue of fact with respect to whether KAI observed corporate formalities. (Babbitt Affidavit, Exhibit 4, at 19.)

The district court concluded that KAI was inadequately capitalized in that it lacked sufficient funds to cover expenses despite the fact that Mr. Kummerfeld infused KAI with hundreds of thousand dollars worth of loans. The district court correctly observed that Mr. Kummerfeld's assertion that KAI was adequately funded because he loaned the company money does not raise a genuine issue of material fact with regard to the capitalization of KAI.

The facts before the district court also demonstrated that Mr. Kummerfeld and his wife, Elizabeth Kummerfeld, had appropriated KAI funds for their own use, including paying lawyers to represent Ms. Kummerfeld and to allow Mr. Kummerfeld to operate his business out of KAI's offices rent free. In response, Mr. Kummerfeld offered no evidence or documentation, only a bald assertion that the rent-free arrangement was a form of repayment of loans. That

unsubstantiated claim failed to raise a question of fact regarding the owners' appropriation of KAI funds to their own use.

The district court also correctly concluded that Mr. Kummerfeld and his wife had commingled their personal funds with KAI. (Babbitt Affidavit, Exhibit 4, at 20.) The facts showed that Mr. Kummerfeld's significant loans to KAI during the years 1997, 1998 and 2000, that Ms. Kummerfeld withdrew $50,000 from KAI without any evidence of prior loans, and that Mr. Kummerfeld mortgaged their Cape Cod property to pay KAI debts. Mr. Kummerfeld offered no rebuttal with regard to his loans or his mortgage of the Cape Cod property to pay KAI debts. Instead, he argued, without any documentary support, that Mrs. Kummerfeld's withdrawal was repayment for a loan she had previously made. That claim failed to raise a material issue of fact with regard to his domination of KAI. (Babbitt Affidavit, Exhibit 4, at 21-22.)

Further, Mr. Kummerfeld failed to provide any evidence that genuinely disputed that his domination of KAI was used to perpetrate a wrong injuring Cordius Trust, namely the failure of KAI to satisfy the judgment in this action. Mr. Kummerfeld was deposed twice before entry of judgment and once afterwards, and he has never claimed to have been unaware of the judgment. After entry of the judgment, Mr. Kummerfeld continued to loan substantial sums to KAI, continued to act as an officer and director, and continued to conduct KAI business and be reimbursed by KAI. No payment has ever been made on the judgment. (Babbitt Affidavit, Exhibit 4, at 22.) On these undisputed facts, the district court correctly concluded that "it is necessary to pierce the corporate veil of KAI and render Mr. Kummerfeld's assets amenable to attachment in order to enforce this Court's prior judgment and to achieve equity in this matter."

11

(Babbitt Affidavit, Exhibit 4, at 23.) As a result, Mr. Kummerfeld cannot establish a likelihood that he will be successful on appeal.

### 3. No Substantial Rights were Affected by Cordius Trust's Method of Initiating the Special Proceeding

Donald Kummerfeld claims on appeal that the district court erred by concluding that Cordius Trust should have initiated this proceeding by serving a separate document entitled "petition" in addition to the documents that were served. The district court correctly rejected this form-over-substance contention. Mr. Kummerfeld was served with a Notice of Petition, a Memorandum in Support of Petition and an Appendix of Exhibits in Support Of Petition. In response, he submitted evidentiary and substantive arguments in opposition. Additionally, Magistrate Judge Ellis, who supervised the litigation for approximately one year, held multiple conferences and determined that neither side sought to supplement the record.

Perhaps most importantly, Mr. Kummerfeld cannot state what, if anything, he would have asserted differently had Cordius Trust filed a petition instead of a memorandum of law. In sum, Mr. Kummerfeld received ample notice of the relief that Cordius Trust sought and the grounds on which that relief was sought. Mr. Kummerfeld opposed Cordius Trust's petition voluminously. Because Mr. Kummerfeld cannot identify any substantial rights impaired by the absence of a separate document entitled "petition," it is unlikely that the district court's ruling will be reversed.

### 3. Service of the Special Proceeding was Proper.

Mr. Kummerfeld next argues in his appeal that service of the Notice of Petition and accompanying Memorandum of Law was improper because they were served by mail rather than in hand. As the district court observed, however, Cordius Trust attempted to personally serve Mr. Kummerfeld at the KAI offices but was informed that Mr. Kummerfeld had moved and left

no forwarding address. Cordius Trust succeeded in serving Mr. Kummerfeld via certified mail at his home address.

Mr. Kummerfeld does not dispute that he was served. In claiming that he should have been served in hand, he ignores the fact that he had purposefully evaded service when Cordius Trust had previously attempted personal service. Indeed, the district court, Denise Cote, J., was compelled to issue an order allowing Cordius Trust to serve Mr. Kummerfeld by mail. (Babbitt Affidavit, Exhibit 4, at 11 (citing *Cordius Trust v. Kummerfeld Assoc., Inc.*, No. 99 Civ. 3200 (DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000)). Unlike Mr. Kummerfeld, the district court did not ignore its prior order. Rather, Judge Cote observed the numerous steps that Cordius Trust took to effect service and concluded that it was reasonable for Cordius Trust to rely upon the court's prior order allowing service by mail when the other methods for service failed. Because the method of service in no way affected Mr. Kummerfeld's ability to oppose Cordius Trust's motion, and in light of the district court's prior ruling with regard to service on Mr. Kummerfeld, it is unlikely that Mr. Kummerfeld will persuade the Court of Appeals to reverse the district court on this ground.

### 4.   Cordius Trust Correctly Commenced its Action as a Special Proceeding

Mr. Kummerfeld argues on appeal that the district court erroneously agreed with Cordius Trust that its action to pierce the corporate veil did not require the commencement of a plenary action. An action to pierce the corporate does not constitute an independent cause of action. Instead, it "is a means of imposing liability on an underlying cause of action." (Babbitt Affidavit, Exhibit 4, at 8 (quoting *Peacock v. Thomas*, 516 U.S. 349, 354 (1996)). Thus, the district court correctly determined that the action fell within the scope of Federal Rule of Civil Procedure 69, which grants the District Court authority to enforce judgments.

Mr. Kummerfeld does not dispute that the district court's exercise of subject matter jurisdiction was valid.  Rather, Mr. Kummerfeld argues that Rule 69 strictly binds a district court to follow the execution procedures of the state in which the district is located.  That argument ignores the fact that a district court's authority is not limited by the "technical availability" of the CPLR.  *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 623 n.7 (2d Cir. 1995).  As a result, Judge Cote reasonably concluded that this action could proceed under rule 69 and it is unlikely that the Second Circuit will reverse the district court on this basis.

### b.     Mr. Kummerfeld Has Not Provided Sufficient Facts to Demonstrate Irreparable Harm

Mr. Kummerfeld has failed to provide this Court with a sufficient basis to conclude that he would, in fact, be irreparably harmed absent a stay.  Additionally, Mr. Kummerfeld has failed to provide grounds that would warrant the extraordinary relief that he seeks — waiver of the bond requirement.

Specifically, Mr. Kummerfeld has failed to provide sufficient information to substantiate his claim that he will be forced to file bankruptcy should he be required to enter a bond.  Indeed, the assets that can be readily identified through the documents produced to date undermine his claim.  Mr. Kummerfeld now values his beachfront property on Cape Cod at approximately $820,000.  (Exhibit 4 to Declaration of Donald Kummerfeld In Support Of Rule 62 Motion For Stay Of Proceedings, March 24, 2005.)  In this context, reducing the value of that property suits his purpose; hence, his reliance on this most recent appraisal.  In other contexts, however, when it suited his purpose to increase the value of the property, Mr. Kummerfeld has relied on three other appraisals conducted in the past four years, all of which valued the property at between $1.5 million and 1.85 million.  (Babbitt Affidavit, Exhibits 7, 8, 9.)  These appraisals have even been submitted to the District Court for the Southern District of New York by Elizabeth

14

Kummerfeld in an attempt to persuade that court to permit her to travel internationally before her criminal trial. (Babbitt Affidavit, Exhibit 7.) Most importantly, all of these appraisals state that they have determined the fair market value of the property "as is", meaning in its current state without any repairs or alterations. Thus, Mr. Kummerfeld assertion that his property in Brewster is not sufficient to satisfy a judgment is not supported by the evidence and appears, instead, to be a matter of convenience.

Additionally, KAI's 2003 income tax return lists artwork apparently owned by KAI that is worth approximately $24,381. (Kummerfeld Affidavit, Exhibit 15.) Without providing any documentary support, Mr. Kummerfeld, in his affidavit, dismisses its value, claiming that he does not believe that it "could be readily liquidated." Of course that claim is directly undermined by his own attestation to its value in the tax return that he signed and submitted to the United States government on behalf of KAI. Moreover, the 2003 tax return, as have previous returns, lists buildings and other depreciable property valued at $120,000. These assets are in addition to the more than $150,000 in loan receivables that Mr. Kummerfeld claims are unrecoverable but that have been listed as a KAI asset for years. No documentary support has ever been provided to substantiate any of Mr. Kummerfeld's claims regarding these assets. None of these assets have ever been used to satisfy the judgment in favor of Cordius Trust.

Mr. Kummerfeld also claims that his living expenses are modest or low, notwithstanding the fact that until recently he paid $60,000 per year in rent for an apartment on Central Park South, leased a Jaguar and traveled extensively as recently as last year. Mr. Kummerfeld acknowledges his income of £100,000 per year and his other consulting income. Simply put, Mr. Kummerfeld's assets and his lifestyle are not consistent with someone on the verge of declaring bankruptcy.

Mr. Kummerfeld submits for the Court's review his March 25, 2004 mortgage of $700,000. (Kummerfeld Affidavit, Exhibit 1.) The existence of that mortgage is telling, because Mr. Kummerfeld entered into that mortgage *after* Magistrate Judge Ronald L. Ellis had issued his Report and Recommendation that Mr. Kummerfeld's assets be rendered amenable to Cordius Trust's judgment. (*Compare* Exhibit 1 (dated March 25, 2004) *with* Babbitt Affidavit, Exhibit 4, at 3 (reciting date of Judge Ellis's Report and Recommendation as February 19, 2004).) Thus, when Donald Kummerfeld knew that Judge Ellis had recommended that his property be attached, he remortgaged his property and more than doubled the encumbrance on the property.[5] The Kummerfelds' use of the proceeds of that loan have yet to be documented.

Finally, Mr. Kummerfeld argues that a bond should not be required and that Cordius Trust should not be permitted to enforce this judgment because there is a risk, if Cordius Trust enforces the judgment and Mr. Kummerfeld is somehow successful on appeal, that Cordius Trust would not return the property. However, one of the purposes of a bond is to secure property to make sure that it can be returned to the Mr. Kummerfeld if he is successful on appeal. *See Morgan Guaranty Trust Co.*, 702 F.Supp. at 65. Thus, Mr. Kummerfeld's concerns would, in fact, be alleviated were he obliged to post a bond as this would ensure the return of his property should his appeal prove successful.

Even more simply and cheaply, Mr. Kummerfeld could have obtained the stay that he desires had he agreed to District Judge Cote's condition that he place the property beyond his reach for the duration of the appeal. Given that Mr. Kummerfeld has refused to take that minimal and reversible step to secure Cordius Trust's judgment through the appeal, Mr. Kummerfeld should not be heard to complain of irreparable harm. Any harm that would result

---

[5]    Mr. Kummerfeld's suggestion that his wife was mentally impaired as early as 2002 is undermined by the fact that she apparently executed their mortgage on March 25, 2004. (Kummerfeld Affidavit, Exhibit 1.)

from execution on the property during the appeal was entirely within his control to avoid; he

purposefully chose not to avoid it and should not be granted relief on the basis of that choice.

In sum, Mr. Kummerfeld has failed to show that there is a risk of irreparable harm absent

a stay and if a bond were imposed. Clearly, Mr. Kummerfeld has not provided this Court with a

sufficient basis on which it could reach this conclusion.

### c.    Cordius Trust Would Suffer Harm Were A Stay Issued Without a Bond

In denying Mr. Kummerfeld a stay unless he placed his Cape Cod home in escrow, Judge

Cote correctly found that "there is a risk that it we don't capture some assets sooner rather than

later, that they will be placed beyond reach here, either for instance an increase of the mortgage

on the house or other alienation of that property. And the history here of these years of litigation

by a trust have been extraordinarily costly to it and so far not a penny has been paid on the

judgment." (Transcript at 23.) Judge Cote's observation was amply supported by the evidence

of assets that KAI has possessed since the entry of judgment that Donald Kummerfeld has not

used to pay this judgment.

Specifically, on page 8 of the Declaration of Defendant of Offender Net Worth and Cash

Flow Statements executed by Ms. Kummerfeld on June 10, 2002, in the criminal matter in which

she was convicted, Southern District criminal docket number 00 CR 49, (Babbitt Affidavit,

Exhibit 6), Ms. Kummerfeld attests that she paid a judgment in the amount of $147,270 that had

been obtained by Blue Arrow Services, Inc./Manpower, Inc. Notably, that judgment was entered

on April 19, 2001, over one year after judgment entered against her and KAI in this matter.

More importantly, the Blue Arrow Services judgment post-dated the Restraining Notice to

Judgment Debtors issued by Cordius Trust to Ms. Kummerfeld and KAI on February 20, 2001.

Case 1:04-mc-10267-WGY   Document 10   Filed 04/13/2005   Page 18 of 22


Thus, the payment of the Blue Arrow Services judgment necessarily violated the Restraining Notice issued under New York CPLR § 5222(b). (Babbitt Affidavit, Exhibit 10.)

Mr. Kummerfeld, Ms. Kummerfeld and KAI were also defendants in a securities fraud case entitled *Gazabo SA De CV v. Kummerfeld*, docket number 2:01 cv 2579, in the United States District Court for the Western District of Tennessee and filed July, 2001, approximately 18 months after judgment entered in this matter. (Babbitt Affidavit, Exhibit 11.) According to the court's docket sheet, the defendants settled the matter in or about January 31, 2003. Again, this settlement payment was necessarily made after judgment was issued in this case and after restraining notices had been issued to the judgment debtors.

Moreover, KAI's 2002 tax return indicated that KAI had assets of $113,000 in cash on hand at the close of 2001. Mr. Kummerfeld later claimed that this balance represented monies that he personally advanced to pay KAI debts. Assuming the veracity of that unsupported claim, it demonstrates once again the Mr. Kummerfeld advanced KAI whatever funds he chose in order to pay whatever funds he desired. Notably, he chose not to cause KAI to pay any part of Cordius Trust's judgment.

Mr. Kummerfeld has previously attested in an affidavit submitted to the Southern District and the Second Circuit that both KAI and Ms. Kummerfeld possess assets that produce income in the amount of approximately $2,000 per year and have held those both pre and post-judgment. He now asserts that those partnerships were disbanded but provides no indication of the disposition of the interests in the assets underlying those partnerships. Furthermore, it has also been disclosed that in the year 2000, KAI had revenue of $48,000 and in 2002, it had revenue of $37,000. Yet, none of these assets have been paid to satisfy the underlying judgment, despite the restraining notices that were issued.

Additionally, KAI bought a box at the U.S. Open every year up until 2002. In 2002, after Cordius Trust attempted to seize these tickets in partial satisfaction of its judgment, Donald Kummerfeld changed the name in which the tickets were purchased to himself instead of the company. Again, the money that KAI used to purchase these tickets could have been used to satisfy the judgment entered by Cordius Trust. More importantly, in switching the name in which the U.S. Open tickets were purchased after Cordius Trust attempted to execute on those tickets, Donald Kummerfeld revealed the lengths to which he would go to impede Cordius Trust's right to recover its judgment.

Mr. Kummerfeld's homestead declaration is another transparent attempt to defeat Cordius Trust's efforts to execute on its judgment. That declaration was executed only *after* Judge Cote issued her decision, rendering Mr. Kummerfeld's assets amenable to attachment in satisfaction of Cordius Trust's judgment.[6] Further, the Kummerfelds' assertion of their intent to reside in their beach-front home permanently is a sharp departure from their sworn assertions, on every tax return that they have produced since 1997, that they had not used the property for personal purposes for more than the greater of 14 days or ten percent of the total days rented at fair market value. (Kummerfeld Affidavit, Exhibit 14, Schedule E.) In other words, the Kummerfelds have attested since at least 1997 that this property is merely a source of supplemental rental income (or loss) and not a dwelling that they use. Now that Cordius Trust seeks to collect on its judgment, the Kummerfelds adopt whatever position suits their purpose.

The fact that Mr. Kummerfeld remortgaged his Cape Cod property after Magistrate Judge Ellis issued his recommendation that the KAI corporate veil be pierced also supports Judge Cote's conclusion that "if we don't capture some assets sooner rather than later, that they will be

---

[6]    Notably, this document was also executed by Elizabeth Kummerfeld in 2004, years after her alleged mental disability commenced.

placed beyond reach here. . . ." (Babbitt Affidavit, Exhibit 4, at 22.) Were a stay entered absent a bond, Cordius Trust's ability to recover on its judgment would continue to be imperiled by the activities of Donald and Elizabeth Kummerfeld. Therefore, Mr. Kummerfeld's motion should be denied.

### c.    The Public Interest Would Be Harmed By A Stay Without Bond

Judge Cote aptly observed that "[a]t its heart, this case concerns a fraud and it continues to concern fraudulent activity, failure to pay legal obligations, various maneuvers to avoid legal obligations. There is a strong public interest here that this judgment and the underlying judgments be enforced and that the requirements of the law be met. Relying on, among other cases, *Muhammad v. Reno*, 309 F.3d 95." (Transcript at 23.) Mr. Kummerfeld has utterly failed to counter this reasonable and accurate observation. Indeed, no public policy supports Mr. Kummerfeld's conduct in this matter or his pursuit of a stay without a bond.

### d.    Were this Court To Grant a Stay, A Bond Should Be Required

Mr. Kummerfeld argues that because of financial hardship, he should not be required to file any bond whatsoever. In this case, the district court granted Mr. Kummerfeld a stay on the reasonable condition that he place his Cape Cod property beyond his control – so he could not further increase the mortgage, for example. Mr. Kummerfeld refused to take that step and thereby obtain the stay he desired. Mr. Kummerfeld "cannot expect to continue 'business as usual' without 'assum[ing] some financial burden' in recognition of the rights bestowed upon the judgment creditor by the judgment." *Teacher's Ins. and Annuity Assoc.*, 1991 WL 254573, at *3 (quoting *Trans World Airlines v. Hughes*, 314 F.Supp. 94, 98 (S.D.N.Y. 1970) *aff'd* 449 F.2d 51 (2d Cir. 1971)).

In this case, Mr. Kummerfeld claims that the filing of a bond will render him insolvent. The evidence undermines such a conclusion. Therefore, even if this Court were to conclude that Mr. Kummerfeld had demonstrated that a stay were appropriate, issuance of a stay should be contingent upon the filing of a bond. *See Matthews v. CTI Container Transport Inter. Inc.*, 689 F.Supp. 348, 350 (S.D.N.Y. 1988) (denying judgment debtor's application for stay pending appeal without full supersedeas bond in the absence of proof that a bond would result in bankruptcy).

## CONCLUSION

Donald Kummerfeld cannot satisfy the prerequisites for entry of a stay without bond pending appeal.  Therefore, his motion should be denied.

CORDIUS TRUST

By: _____
   Bradford S. Babbitt (BBO# 566390)
   Email: bbabbitt@rc.com
   Mary L. Cataudella (BBO# 553350)
   Email: mcataudella@rc.com
   Robinson & Cole LLP
   One Boston Place
   Boston, MA 02108-4404
   Tel. 617-557-5900
   Fax 617-557-5999