UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------- X
                                                        :
CORDIUS TRUST,                                          :
                                                        :
                    Plaintiff,                          :     Case No. 04-MBD-10267
                                                        :
        - against -                                     :
                                                        :
DONALD KUMMERFELD,                                      :
                                                        :
                    Defendant.                          :     APRIL 12, 2005
------------------------------------------------------- x

**AFFIDAVIT OF BRADFORD S. BABBITT IN SUPPORT
OF MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S RULE 62 MOTION FOR STAY PENDING APPEAL**

I, Bradford S. Babbitt, being duly sworn, do hereby depose and say:

1.      I am over the age of 18 and understand the obligations of an oath.

2.      I am an attorney admitted to the practice of law in the State of Connecticut, the Commonwealth of Massachusetts, the United States District Courts sitting in those states and the United States Court of Appeals for the Second Circuit. I am a partner in the firm of Robinson & Cole LLP.

3.      I represent Cordius Trust in the above captioned case and have since its inception. In connection with this case, I was admitted *pro hac vice* by The Honorable Denise Cote, Judge of the United States District Court in the Southern District of New York.

4.      I submit this affidavit and the exhibits attached hereto in support of Cordius Trust's Memorandum Of Law In Opposition To Donald Kummerfeld's Rule 62 Motion For Stay Pending Appeal.

5.      Exhibit 1 attached hereto is a true and accurate copy of the transcript of the ruling of the United States District Court for the Southern District of New York, Denise Cote, J., issued in open court at the conclusion of the bench trial in *Cordius Trust v. Elizabeth Kummerfeld and Kummerfeld Associates, Inc.*, 99 Civ. 3200 (DLC).

6.      Exhibit 2 attached hereto is a true and accurate copy of the judgment entered by the United States District Court for the Southern District of New York, Denise Cote, J., in *Cordius Trust v. Elizabeth Kummerfeld and Kummerfeld Associates, Inc.*, 99 Civ. 3200 (DLC).

7.      Exhibit 3 attached hereto is a true and accurate copy of the ruling of the United States Court of Appeals for the Second Circuit in *Cordius Trust v. Elizabeth Kummerfeld and Kummerfeld Associates, Inc.*, 99 Civ. 3200 (DLC).

8.      Exhibit 4 attached hereto is a true and accurate copy of the ruling of the United States District Court for the Southern District of New York, Denise Cote, J., on the petition of Cordius Trust for a writ of execution and turnover order against Donald Kummerfeld *Cordius Trust v. Donald Kummerfeld*, 99 Civ. 3200 (DLC).

9.      Exhibit 5 attached hereto is a true and accurate copy of the judgment entered by the United States District Court for the Southern District of New York, Denise Cote, J., on the petition of Cordius Trust for a writ of execution and turnover order against Donald Kummerfeld *Cordius Trust v. Donald Kummerfeld*, 99 Civ. 3200 (DLC).

10.     Exhibit 6 attached hereto is a true and accurate copy of the Declaration of Defendant or Offender Net Worth and Cash Flow Statements executed by Elizabeth Kummerfeld on June 10, 2002, in the criminal matter docket number 00 CR 49 in the United States District Court for the Southern District of New York.  I obtained this document from counsel for Donald D. Kummerfeld.

11.    In connection with post-judgment discovery in this action, I went to the clerk's office of the United States District Court for the Southern District of New York and obtained a copy of a Declaration of Gerald E. Ross in Support of Application of Defendant Elizabeth Miller Kummerfeld to Modify Travel Restriction dated October 18, 2000. A true and accurate copy of that Declaration is attached hereto as Exhibit 7. The Declaration was executed by counsel for Mrs. Kummerfeld in the criminal proceedings against her before The Honorable Kimba Wood, which resulted in the conviction of Mrs. Kummerfeld for wire fraud, docket number 00 CR. 49. The Declaration is docket entry number 54 in that matter. As shown in paragraph 9 of that Declaration, Mrs. Kummerfeld's counsel in that case submitted to the court a certified appraisal dated October 5, 2000, establishing a fair market value of the Kummerfelds' Brewster property of $1.7 million. The appraisal is attached to Attorney Ross's Declaration.

12.    On May 14, 2004, counsel for Donald Kummerfeld produced to the undersigned two appraisals of the Brewster property that were prepared on March 10 and 15, 2004. These appraisals are attached as Exhibits 8 and 9 to this Affidavit. The first appraisal by Thomas Podzikowski, appraises the fair market value of the property "as is" at $1.85 million. The second appraisal, by Mark D. Harvey, appraised the property at $1.5 million in its "as is" condition.

13.    Exhibit 10 attached hereto is a true and accurate copy of a Restraining Notice to Judgment Debtors issued by counsel for Cordius Trust to Elizabeth Kummerfeld and Kummerfeld Associates, Inc. on February 20, 2001.

14.    On May 27, 2004, staff from my office printed the docket sheet from the case of *Gazaba SA De CV v. Kummerfeld*, docket number 2:01 cv 2579, from the Western District of Tennessee. A true and accurate copy of that docket sheet, as of that date, is attached hereto as Exhibit 11.

Dated:  April 12, 2005

CORDIUS TRUST

By:

Bradford S. Babbitt (BBO-566390)
Email: bbabbitt@rc.com
Robinson & Cole LLP
One Boston Place
Boston, MA 02108-4404
Tel. 617-557-5900
Fax  617-557-5999

State of Connecticut          SS:

County of Hartford

The foregoing instrument was acknowledged before me this 12th day of April, 2005by Bradford S. Babbitt as true to the best of his knowledge and belief.

Commissioner of the Superior Court
Notary Public
My Commission Expires:

CHRISTINE M. MARKSTEIN
NOTARY PUBLIC
MY COMMISSION EXPIRES MAY 31, 2009

4

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2005, I caused a copy of Cordius Trust's Opposition to Donald Kummerfeld's Motion for Stay Pending Appeal Without Bond and the Affidavit of Bradford S. Babbitt in Support of Memorandum of Law in Opposition to Defendant's Rule 62 Motion for Stay Pending Appeal to be served on the interested parties in this action by mailing a copy of same to the following:

> Michael Martin
> Foley Hoag
> 155 Seaport Boulevard
> Boston, MA 02210

_Mary L. Cataudella_

_____
Mary L. Cataudella

# EXHIBIT 1

027ncorf                                                    1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   CORDIUS TRUST,

4                    Plaintiff,

5            v.                        99 Civ. 3200 (DLC)

6   ELIZABETH KUMMERFELD, and
    KUMMERFELD ASSOCIATES, INC.,
7
                  Defendants.
8
    ------------------------------x
9
                                      February 7, 2000
10                                    2:10 p.m.

11  Before:

12                     HON. DENISE L. COTE,

13                                       District Judge

14                     APPEARANCES

15  ROBINSON & COLE LLP
        Attorneys for Plaintiff
16  BY:  JAMES WADE
        BRADFORD S. BABBITT
17
    SHELDON FARBER
18      Attorney for Defendants

19   :r                :\          : .

20   ~ney.      s                  :'s

21

22

23

24

25

027ncorf

Decision

78

1        THE COURT:  This diversity action arises out of

2  defendants' alleged breach of a promissory note executed by

3  Elizabeth Kummerfeld both in her individual capacity and as

4  president of Kummerfeld Associates, Inc., or KAI.  The Note,

5  payable to plaintiff Cordius Trust, is for $1,418,000.

6  Plaintiff alleges that defendants have defaulted on the Note

7  and seeks to recover the amount of the Note, prejudgment

8  interest in accordance with the terms of the Note,

9  postjudgment interest, and attorneys' fees and costs.

10       In their answer, defendants contend that the Note is

11  unenforcible because it is usurious and its execution was

12  induced through fraudulent representations, threats, duress

13  and coercion.  They have filed counterclaims for fraud and

14  *prima facie* tort.

15       In accordance with the individual practices of this

16  Court in civil bench trials, the parties were instructed to

17  submit the direct testimony of their witnesses by affidavit

18  and deposition designations in advance of trial, by January

19  21.  The pretrial documents received by the Court contained

20  neither affidavits nor deposition designations.  Neither party

21  had requested additional time in which to prepare such

22  documents.

23       In a conference held with the Court on January 28,

24  plaintiff indicated that it had believed it had included an

25  affidavit with its pretrial submissions, and offered the

Decision

1    affidavit of Joel Richards executed on January 20.

2    Defendants, represented at that time by Thomas Caulfield,

3    admitted that they had neither submitted any affidavits or

4    deposition designations nor requested additional time in which

5    to do so.  The Court thereafter confirmed that Richards would

6    be the sole trial witness, that the only direct testimony the

7    Court would consider would be reflected in his affidavit, and

8    that any offer of proof by the defendants as to affirmative

9    defenses or counterclaims would be confined to the

10   cross-examination of Richards.

11          On January 31, Sheldon Farber entered a notice of

12   appearance as defendants' counsel.  On February 4, Mr. Farber

13   submitted to this Court a written request to supplement the

14   pretrial documents with a memorandum of law and an affidavit.

15   During a telephone conference with the parties later that day,

16   Mr. Farber indicated that the affidavit he intended to submit

17   was that of Elizabeth Kummerfeld.  Plaintiff's counsel

18   objected to this submission, citing the material outstanding

19   discovery that Ms. Kummerfeld had failed to provide that would

20   be necessary for counsel's effective cross-examination of her.

21   Upon the Court's subsequent request for an offer of proof,

22   Mr. Farber indicated that the proposed affidavit would relate

23   entirely to two issues; that is, two alleged repayments, each

24   of $100,000, that were made on the original investment of

25   $400,000 by Cordius Trust with KAI.

027ncorf
Decision

1          In his closing remarks, defense counsel again asked

2    this Court for permission to let Ms. Kummerfeld testify.  For

3    the reasons I've already described at the beginning of today's

4    proceeding and in the telephone conference with the Court last

5    week, her testimony is barred not only as being untimely, but

6    also the issues of the $200,000 are, at base, when all is said

7    and done, absolutely irrelevant to the issues that I have to

8    decide today.

9          At our telephone conference last week, I confirmed

10   that these these two alleged payments were neither on the

11   promissory note that is the subject of the present litigation,

12   nor relevant to the defendants' affirmative defenses.

13   Mr. Farber's request to submit the affidavit of Ms. Kummerfeld

14   was, therefore, denied and still is.  However, I did permit

15   the defendants to submit a memorandum of law on their

16   affirmative defenses of economic duress and usury, the only

17   two issues identified by Mr. Farber last week as requiring

18   briefing, and allowed the plaintiff to respond to any

19   arguments on these two defenses.  On February 7, Mr. Farber

20   submitted a memorandum of law contending that the underlying

21   transaction on which the promissory note was based was

22   usurious and that the promissory note itself was

23   unconscionable.  Plaintiff's reply memorandum has also been

24   received today.

25          At the trial Mr. Richards was cross-examined by

027ncorf

Decision

81

1    defendants' current counsel, Sheldon Farber.  Based on this

2    record, I now deliver my findings of fact and conclusions of

3    law.

4         .         KAI is a corporation organized and existing under the

5    laws of New York with its principal place of business in New

6    York City.  Kummerfeld is a resident of New York state and is

7    president and director of KAI and exerts complete control over

8    KAI.  Cordius Trust is a trust organized and existing under

9    the laws of California.  Joel Richards, a resident of

10   California, is the trustee of Cordius Trust.

11            In March 1997, Cordius Trust and KAI executed an

12   agreement pursuant to which KAI promised to invest funds made

13   available to it by the trust in a capital enhancement program

14   consisting of three phases.  The agreement stated that at the

15   end of Phase I, which was to last 30 days, Cordius Trust would

16   recover its investment capital together with its initial

17   distribution of approximately 40 to 50 percent of its total

18   cash investment.  The agreement further stated that the profit

19   distribution during Phases II and III of the program, each of

20   which would last 15 weeks, is estimated to be 1 percent of the

21   total cash investment per day to be distributed monthly.

22            Upon execution of the agreement, Cordius Trust

23   provided KAI with $400,000 in accordance with the terms of the

24   agreement.  The agreement provided that the funds would remain

25   in the account of Cordius Trust until and unless a bank

Decision

1  guarantee or similar instrument was exchanged for the funds.

2  The agreement thus promised that the investment monies would

3  be safeguarded.

4          In June of 1997, Kummerfeld reported that the

5  investment of $400,000 with 200 percent profit would be

6  released in a week or so.  In approximately August of 1997, an

7  entity unknown to Cordius Trust provided $100,000 to Cordius

8  Trust.  Kummerfeld characterized this money as, at least at

9  one point in time, a return of $75,000 in principal and

10  $25,000 in profits.  In March of 1998, Kummerfeld reported

11  that within two weeks the trust would receive $325,000 as a

12  return of principal and 240 percent in profits in the amount

13  of $780,000.  The money was not forthcoming.  In December

14  1998, David Abrams notified Cordius Trust that he had made

15  separate arrangements with KAI for the repayment of $100,000

16  of the $400,000 that had originally been invested by the

17  trust.

18          In early 1999, Richards attempted to settle the

19  dispute that had arisen between the trust and KAI as a result

20  of KAI's conduct regarding the funds the trust had provided

21  pursuant to the agreement.  As early as February 10 of 1999,

22  Kummerfeld confirmed that a settlement as to all parties,

23  including Abrams, had been agreed to and that that settlement

24  included a principal payment of $325,000 and earnings in the

25  amount of $1,093,000.  When Kummerfeld was slow to finalize

027ncorf
Decision

1   the settlement, the plaintiff sent her a draft civil complaint

2   reflecting allegations of fraud and other misconduct.

3         Kummerfeld ultimately executed a promissory note on

4   March 5, 1999 in both her individual capacity and her capacity

5   as president of KAI.  The executed note was for $1,418,000.

6   At the time Kummerfeld executed the Note, she was aware that

7   she could have consulted an attorney regarding the terms of

8   the Note, but, as reflected in the note's express terms, she

9   voluntarily and knowingly waived that right.

10         Under the payment schedule established by the Note,

11   the first payment to Cordius Trust was due no later than March

12   23, 1999.  As to interest on overdue payments, the Note

13   stated: "if each payment is not received on the date on which

14   it is due, interest shall accrue on such overdue payment at

15   the rate of 10 percent per annum from the date on which the

16   payment was due . . . until the date on which the payment is

17   received."  The Note defined "events of default" as including

18   "default in the payment of any installment of the interest on

19   this Note when and as the same becomes due and payable and the

20   continuance thereof for a period of ten days."  Upon an event

21   of default, Cordius Trust could, at its sole discretion,

22   declare the entire principal sum of the Note then unpaid,

23   together with interest, immediately due and payable.  The Note

24   stated that upon an event of default, interest would accrue on

25   the unpaid principal amount of the Note at a yearly rate of 10

027ncorf

Decision

1  percent from the date on which the event of default occurred.

2        The defendants did not make the first payment due

3  under the Note on March 23, nor any other payments.  On April

4  2, 1999, Richard notified Kummerfeld that she and KAI were in

5  default under the Note and that the entire debt was due and

6  owing.  Under the terms of the Note, interest runs at the rate

7  of 10 percent on unpaid principal from the event of default,

8  which is ten days after any installment is due but not paid,

9  that is April 2, 1999.

10        The Note provides that it "shall be governed by and

11  construed and enforced in accordance with the laws of the

12  State of New York without regard to the choice of law

13  principles thereof."  "[A] promissory note stands on its

14  own -- the note alone establishes the plaintiff's right to

15  payment."  Eisenstein v. Kelly Music & Entertainment Corp., 97

16  Civ. 4649 1998 WL 289734, at *4 (S.D.N.Y. June 4, 1998)

17  (internal quotation omitted).  Therefore, to state a cause of

18  action on a promissory note, a plaintiff must simply show

19  proof of the note and failure to make payment.  See, e.g.,

20  Diversified Financial Systems, Inc. v. Bertrum, 97 Civ. 5718,

21  1999 WL 714081, at *2 (Sept. 14, 1999 S.D.N.Y.).

22        Cordius Trust has established that the 1999 Note was

23  executed by the defendants and that no payments on the Note

24  have been made.  The defendants do not contest that they

25  executed the Note or that they failed to repay the debt.

027ncorf
Decision

1    Instead they assert the following two affirmative defenses:

2    that the defendants' signatures on the Note were obtained

3    through economic duress, and that the Note is usurious.

4        Let me turn first to economic duress. A party

5    seeking to void a contract because of economic duress

6    "shoulders a heavy burden." Orix Credit Alliance, Inc. v.

7    Bell Realty Inc., 93 Civ. 4949, 1995 WL 505891 at *4. Under

8    New York law, a note is voidable on the ground of duress when

9    it is established that the party asserting the claim of duress

10    was forced to agree to the note by means of a wrongful threat

11    precluding the exercise of his free will. Signet Corp. v.

12    Interbank Fin. Servs., Inc., 755 F.Supp. 103 at 105. Thus, to

13    establish duress, the defendants must prove the following

14    elements:

15        (1) a threat, (2) which was unlawfully made, and (3)

16    caused involuntary acceptance of contract terms, (4) because

17    the circumstances permitted no other alternative. Kamerman v.

18    Steinberg, 891 F.2d 424 at 431. A claim of duress is

19    evaluated under an objective standard. See Eisenstein, 1998

20    WL 289734, at *4. Moreover, a contract entered into under

21    duress is voidable, not void, id., and thus, in order to

22    prevail on a coercion or duress defense to an action to

23    enforce a contract, the defendant must have challenged the

24    contract promptly. See, e.g., DiRose v. PK Management Corp.,

25    691 F.2d 628 at 633-34 (2d Cir. 1982); International Halliwell

027ncorf

Decision

86

1  <u>Mines Ltd. v. Continental Copper & Steel Industries</u>, 544 F.2d

2  105 at 108 (2d Cir. 1976).

3          Defendants have failed to establish the elements of

4  duress.  Their argument that the plaintiff's announced intent

5  to file a civil suit against KAI for the breach of the 1997

6  agreement amounts to an unlawful threat must fail as a matter

7  of law.  A threat to exercise one's legal rights does not

8  constitute duress as a matter of law.  <u>Eisenstein</u>  1998 WL

9  289734, at *5 n.2.  Thus, the threat to commence litigation on

10 a contract does not constitute duress, <u>See, e.g., Orix Credit</u>

11 <u>Alliance, Inc.</u>, 1995 WL 505891, at *4.  Finally, the

12 defendants have offered no evidence that the circumstances

13 Kummerfeld found herself in were such as to permit no

14 alternative but to sign the note.

15         Let me turn to the usury argument.  In support of the

16 argument that the Note is usurious, defendants rely upon the

17 questionable terms and promised rates of return in the 1997

18 agreement between the parties and cite <u>Hammond v. Mariano</u> 451

19 N.Y.S.2d 484 (App. Div. 4th Dep't 1982), for the proposition

20 that usury cannot be purged by covering the original

21 transaction with another note which on its face is

22 nonusurious.  Apparently the argument is that the Note is

23 invalid because it was undertaken to settle the dispute on a

24 usurious contract.  This argument is without merit.

25         As a preliminary matter, the cases on which the

SOUTHERN DISTRICT REPORTERS 212-805-0300

027ncorf

Decision

1  defendants rely involve usurious rates of interest on loans.

2  Although it is undoubtedly true that under New York law, a

3  loan is usurious if the lender intends to take and receive a

4  rate of interest in excess of that permitted by law, such

5  statements are inapposite to defendants' argument that the

6  1997 agreement between the parties is invalid.  The agreement

7  was not a loan, but rather concerned projected rates of return

8  on an investment.  Further, to the extent that the agreement

9  was otherwise tainted, such impropriety arose from the

10  impossible rates of return promised by KAI, and thus cannot

11  invalidate the Note plaintiff negotiated to settle the dispute

12  on that agreement.

13       The defendants neither pled unconscionability in

14  their answer, nor sought leave at any point to include this as

15  an affirmative defense.  Indeed, at no point did defendants

16  announce their intention to make an unconscionability argument

17  until they included it in the memorandum of law submitted the

18  the day of trial.

19       Affirmative defenses are considered to have been

20  waived unless they are pled in the defendant's answer.  See,

21  e.g., Travellers International, A.G. v. Transworld Airlines,

22  Inc., 41 F.3d 1570 at 1580 (2d Cir. 1994); Doubleday & Co. v.

23  Curtis, 763 F.2d 495 at 503 (2d Cir. 1985).  Therefore,

24  arguments as to the note's alleged unconscionability will not

25  be considered.

027ncorf

Decision

1    Finally, the defendants' counterclaims must be

2    dismissed as they are not supported by any evidence.

3    The only unconscionability that the Court can find in

4    connection with this transaction is in connection with the

5    underlying transaction and the defendants' actions.  The

6    defendants' promised investment program indicates to this

7    Court an effort to defraud the plaintiff.  The failure to pay

8    and the false statements contained in the letters prepared by

9    the defendant and submitted to the plaintiff and which have

10    been received in evidence during the course of this trial show

11    a course of conduct to further victimize the plaintiff and

12    deprive it of monies to which it was lawfully entitled.

13    Having found on the record created by this trial that

14    the defendants executed the Note; that the defendants have

15    failed to fulfill any of their obligations under the Note; and

16    that the defendants have been unable to establish any

17    affirmative defense to its enforcement, I find in favor of the

18    plaintiff.  Judgment shall be entered in favor of Cordius

19    Trust for the full amount of the Note, that is, $1,418,000,

20    plus, as stated explicitly in the terms of the Note,

21    prejudgment interest at a rate of 10 percent per year from the

22    date of default.

23    As provided by the terms of the Note, the plaintiff

24    is also entitled to reasonable costs and attorneys' fees

25    incurred in bringing this action.  Plaintiff has submitted

027ncorf

Decision

1  papers in support of its request for attorneys' fees.  The

2  defendant shall submit any opposition to that portion of the

3  request for costs and attorneys fees by February 14.  Any

4  reply is due February 17.

5      Let me turn to the issue of sanctions.

6      Through its motion, plaintiff complained primarily of

7  the defendants' failure to participate in the discovery

8  process and sought entry of a default.  That portion of its

9  request, that is, for entry of the default, is mooted by the

10  judgment I am entering in this case based on the trial we had

11  today.

12      There was also a request for reimbursement for

13  attorneys' fees in connection with the preparation of the

14  motion and for travel expenses for one witness in connection

15  with his deposition.  Ultimately that witness's deposition was

16  taken by telephone, and therefore I think that eliminates the

17  need for me to reach the issue of whether reimbursement of

18  travel expenses is necessary.

19      To the extent that the plaintiff seeks reimbursement

20  of attorneys' fees for the bringing of the motion, that should

21  be folded into the rest of its request for an award of

22  attorneys' fees and costs in this case.

23      Do you want to add it or not to the request that's

24  already been made?

25      MR. WADE:  The legal fees are already in, your Honor.

027ncorf

Decision

1   In other words, if you granted the sanction it would be

2   doubling up.  So the legal fee is in our motion for legal

3   fees.

4           THE COURT:  Fine.

5           MR. WADE:  I think the expenses by Mr. Richards in

6   coming here on a fool's errand, in light of the order that the

7   Court has entered, I think it would be hammering on for us to

8   press that.

9           THE COURT:  I've already denied that.

10          MR. WADE:  Right.

11          THE COURT:  OK.  So we have a schedule.  I think the

12  only outstanding issue, then, is the attorneys' fees and

13  costs.  Opposition should be submitted by February 14, reply

14  by February 17.  With the reply why don't you also submit a

15  proposed judgement, to which I will add whatever award I

16  believe is appropriate in connection with attorneys' fees and

17  costs.

18          MR. WADE:  I presume we can update our affidavit on

19  attorneys' fees up through the current time?

20          THE COURT:  Yes.

21          You should do that promptly so it can be opposed.

22          MR. WADE:  Yes.  It is not hard.  We submitted

23  everything through January 31, and now we are up to the 7th

24  day of February.  That's not difficult.  We can do that

25  tomorrow.

027ncorf

Decision

91

1     THE COURT:  OK.

2         MR. WADE:  I have a request of the Court in light of

3  the ruling and that is, we don't know where this is going to

4  take us from here.  Whether or not the defendants will appeal

5  from your judgment, we don't know.  We do know from the

6  discovery that there are assets that we can look to, to try to

7  recover on the judgment.  We are going to ask the Court to

8  retain jurisdiction of this case so that in the event we need

9  the assistance of the Court to attempt to effectuate judgment,

10  we can come back to this Court rather than having to start a

11  new proceeding in front of a new judge and bring that judge up

12  to speed on the matter.  So we're asking that you retain

13  jurisdiction.  If they take an appeal, that's obviously

14  another issue because then the Court of Appeals gets

15  jurisdiction at that point.  But if they don't, and we are

16  attempting to recover judgment, we may need assistance of

17  court.  In addition to which, if as a result of our efforts to

18  execute on the judgment further substantial legal fees are

19  incurred, there may be an additur in that regard as well.  We

20  know from the history of this case there have been concerted

21  efforts to make it difficult for us to proceed with the

22  matter, and so we may need the assistance of Court in that

23  regard as well.

24         THE COURT:  You will have your request that I retain

25  jurisdiction in the proposed judgment.

027ncorf

Decision

1        ·        MR. WADE:  Yes.

2                 THE COURT:  Mr. Farber?

3                 MR. FARBER:  Your Honor, I would like to address that

4     matter.  I have to object to him characterizing my client as

5     recalcitrant in any way, because, as was obvious from the

6     Court, many papers were not delivered.  I believe some of it,

7     a great deal of it was the fault of counsel who represented

8     her previously.  So I just want that characterization not

9     carried forward in any fashion.

10               With regard to attorneys' fees and any motion or any

11    opposition papers, of course I will discuss it with my client.

12    Otherwise, I much appreciate the hearing, and we'll determine

13    after we receive the transcript as to the course of action

14    that we will take.

15               Thank you, your Honor.

16               THE COURT:  Thank you, Mr. Farber.  I appreciate your

17    effort to assist me today.

18               In terms of whether or not your client has been

19    recalcitrant personally or whether any failure to participate

20    in discovery in an appropriate way was due to prior counsel, I

21    don't think it's necessary or appropriate for me to make

22    findings today.  I would have to do that on notice.

23               Let me just say, Mr. Farber, now that you're in this

24    case, I'm happy to judge that issue afresh going forward, and

25    if there is no recalcitrance and appropriate cooperation with

027ncorf
Decision

1    the orders of this court, it will be greatly appreciated.

2              Thank you.

3              Thank you, all.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 2

4/18



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------ x
                                                 :
**CORDIUS TRUST,**                               :
                                                 :     Case No. 99 Civ. 3200 (DLC)
              Plaintiff,                          :
                                                 :     **JUDGMENT**
          - against -                            :
                                                 :     # 00, 0848
**KUMMERFELD ASSOCIATES, INC. and**              :
**ELIZABETH KUMMERFELD,**                        :
                                                 :
              Defendants.                         :         #53
------------------------------------------------ x

    This action having come on for trial before the Court, The Honorable Denise L.

Cote, United States District Judge presiding, the issues having been duly tried, and the

Court having rendered its decision,

    IT IS ORDERED AND ADJUDGED that Plaintiff recover from Defendants

damages in the amount of $1,418,000.00, plus prejudgment interest at the rate of ten

percent (10%) per annum, calculated from April 26, 1999 through the entry of this

judgment, which totals to $111,011.87 through February 7, 2000 and continues to accrue

at the rate of $388.49 per day until the date of this Judgment, plus postjudgment interest

at the statutory rate of 6.287%, which shall be calculated on the damages plus the

prejudgment interest earned up to the date of this Judgment from the date of this

MICROFILM -9:00 AM
APR 1 2 2000

Judgment until the date on which this judgment is satisfied, plus attorneys' fees and costs in the amount of $ 72, 840 . 73 .

FURTHER, IT IS ORDERED AND ADJUDGED that the Defendants take nothing by their counterclaims and that the counterclaims be dismissed on the merits.

FINALLY, IT IS ORDERED AND ADJUDGED that this Court shall retain jurisdiction over this action to address any issues that arise and are brought before the Court in the course of the execution of this Judgment and to address any additional requests for attorneys' fees and costs associated with the collection of this Judgment.

Dated at New York, New York, this _10 th day of April, 2000_. ~~day of February, 2000.~~

James M. Parkison
Clerk of the United States District Court
for the Southern District of New York

_Denise Cote_
USDJ

CERTIFIED
JAMES M. PARKISON
_Devton_

**THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 4/12/00**

2

# EXHIBIT 3





SDNY
99-CV-3200
Cote

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR THE PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 30ᵀᴴ day of December, two thousand.

PRESENT:

Hon. John M. Walker, Jr.,
Chief Judge,
Hon. James L. Oakes,
Hon. Pierre N. Leval,
Circuit Judges.



UNITED STATES COURT OF APPEALS
FILED
NOV 30 2000
SECOND CIRCUIT

―――――――――――――――――――――――――――――――――――

CORDIUS TRUST,

Plaintiff-Appellee,

v.                                          No. 00-7444

KUMMERFELD ASSOCIATES, INC., and
ELIZABETH KUMMERFELD,

Defendants-Appellants.

―――――――――――――――――――――――――――――――――――

APPEARING FOR APPELLANTS:     SHELDON FARBER, Esq., New York, NY

APPEARING FOR APPELLEE:       JAMES A. WADE, Esq., Hartford, CT

Appeal from the United States District Court for the Southern District of New York (Cote, J.).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND ISSUED AS MANDATE.
JAN - 2 2001

**DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Appellants Elizabeth Kummerfeld ("Kummerfeld") and Kummerfeld Associates, Inc. ("KA") appeal from the April 11, 2000 judgment of the district court, following a bench trial, awarding appellee Cordius Trust ("Cordius") $1,418,000 plus interest, attorneys fees, and legal costs. The award was based on the district court's finding that the appellants had defaulted on their payment obligations to Cordius pursuant to a promissory note ("Note") they had executed. On appeal, the appellants argue that the district court erred in excluding Kummerfeld's testimony regarding (a) usury in an earlier investment transaction that gave rise to the financial obligation the Note was intended to cover, and (b) economic duress in executing the Note due to Cordius's threatened litigation on the earlier business transaction. Appellants also contend that the district court erred in not considering their unconscionability defense.

For substantially the reasons set forth in the district court's opinion read into the record from the bench at the close of trial on February 7, 2000, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Roseann B. MacKechnie, Clerk

By _Lucille Carr_
Lucille Carr, Deputy Clerk

2

# EXHIBIT 4

A-605

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
                                           :
CORDIUS TRUST,                             :
                    Plaintiff,             :
                                           :
          -v-                              :    99 CIV. 3200 (DLC)
                                           :
ELIZABETH KUMMERFELD, KUMMERFELD           :    OPINION AND ORDER
ASSOCIATES, INC.,                          :
                    Defendants.            :
                                           :
------------------------------------------ :
                                           :
CORDIUS TRUST,                             :
                    Petitioner,            :
                                           :
          -v-                              :
                                           :
DONALD KUMMERFELD,                         :
                    Respondent.            :
                                           :
-------------------------------------------X

Appearances:

For Petitioner:
James A. Wade
Bradford S. Babbitt
Ross Katz
Robinson & Cole, LLP
780 Third Avenue, 4th Floor
New York, New York 10017

For Respondent:
Paul Brown
Walter A. Saurack
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169

DENISE COTE, District Judge:

        This action arises out of the efforts of Cordius Trust

("Cordius") to collect a judgment entered by this Court against

Elizabeth Kummerfeld ("Ms. Kummerfeld") and Kummerfeld

Associates, Inc. ("KAI") on April 11, 2000, and affirmed by the

A-606

Second Circuit Court of Appeals on November 30, 2000.  Donald

Kummerfeld ("Mr. Kummerfeld") is Ms. Kummerfeld's husband.

Together, they are the sole officers and shareholders of KAI.

On March 25, 2003, Cordius moved pursuant to Rule 69, Fed.

R. Civ. P., for the issuance of a writ of execution and turnover

order piercing the corporate veil of KAI in order to render Mr.

Kummerfeld's assets amenable to attachment.  Attached to

Cordius's motion were evidentiary submissions in support of its

claims, including the deposition testimony of Mr. and Ms.

Kummerfeld.  This action was referred to Magistrate Judge Ronald

Ellis on March 27 for post-trial supervision.  Mr. Kummerfeld

opposed the March 25 motion on May 16 by filing his own

evidentiary submissions, including his "Affidavit in Opposition

to Petition and in Support of Motion to Dismiss" and excerpts of

his deposition testimony and that of Ms. Kummerfeld, as well as a

motion to dismiss the petition pursuant to Rules 12(b)(5) and

12(b)(6), Fed. R. Civ. P., on the grounds that service of process

was inappropriate, the petition was defective, the action was

improperly commenced as a special turnover proceeding, and

Cordius failed to state a claim upon which relief may be granted.

Over several months, the parties and Judge Ellis discussed Mr.

Kummerfeld's procedural defenses and his June 13, 2003 letter

request for sanctions.  After determining that the record was

complete, and that neither party wished to supplement its

2

A-607

submissions, Judge Ellis issued a Report and Recommendation

("Report") on February 19, 2004, recommending that Mr.

Kummerfeld's motion to dismiss be denied and Cordius's motion to

pierce the corporate veil be granted.

Mr. Kummerfeld has filed objections to the Report, Cordius

has filed a response, and Mr. Kummerfeld has filed a brief in

further support of his objections. For the following reasons,

Judge Ellis's recommendations are adopted.

Background

The Original Action

The following facts are undisputed, unless otherwise noted.

In the original proceedings before this Court, Cordius brought

suit against Ms. Kummerfeld in her individual capacity and as

president of KAI for breach of a promissory noted that she

executed in settlement of claims of fraud and misconduct alleged

by Cordius. On February 1, 2000, the Court denied defendants'

motion to compel arbitration or, in the alternative, to dismiss

the action for lack of jurisdiction. On February 7, at the

conclusion of a bench trial, the Court delivered an Opinion

granting judgment in favor of Cordius. As described in the

February 7 Opinion, Cordius's claims arose from a March 1997

agreement in which KAI promised to invest Cordius's funds in a

three-phase capital enhancement program.

Cordius provided KAI with $400,000 upon execution of the

3

A-608

agreement. In June, Ms. Kummerfeld informed Cordius that its

investment, with a 200% profit, would be released in

approximately one week. In August 1997, Cordius was provided

$100,000. In March 1998, Ms. Kummerfeld reported that Cordius

would receive a $325,000 return of principal and a 240% profit

within two weeks. That amount was not forthcoming, and a dispute

arose between the parties concerning KAI's handling of the funds

made available by Cordius. On March 5, 1999, in settlement of

the dispute, Ms. Kummerfeld executed in both her individual

capacity and as president of KAI a promissory note for

$1,418,000. None of the payments required by the promissory note

were made.

The Court entered judgment in favor of Cordius for the full

amount of the note, plus reasonable costs and attorney's fees.

The Opinion stated:

> The defendants' promised investment program indicates
> to this Court an effort to defraud the plaintiff. The
> failure to pay and the false statements contained in
> the letters prepared by the defendant and submitted to
> the plaintiff and which have been received in evidence
> during the course of this trial show a course of
> conduct to further victimize the plaintiff and deprive
> it of monies to which it was lawfully entitled.

The Second Circuit affirmed the judgment in a summary order dated

November 30, 2000.[1]  <u>Cordius Trust v. Kummerfeld Assoc., Inc. et</u>

<u>al.</u>, 242 F.3d 264 (Table), 2000 WL 1775516 (2d Cir. Jan. 2,

---

[1] The mandate issued on January 2, 2001.

4

A-609

2001).  On February 20, 2001, Cordius served Ms. Kummerfeld and KAI with a Restraining Notice to Judgment Debtor, pursuant to New York Civil Practice Law and Rules Section 5222(b).  No payments have been made on the judgment owed Cordius.

KAI

KAI was formed in 1985 by Mr. and Ms. Kummerfeld, each of whom owns 50 percent of KAI's shares.  Since the company's inception, Ms. Kummerfeld has been president and Mr. Kummerfeld has been chairman of the board and treasurer.  In 1999, however, Mr. Kummerfeld could not recall who held the position of treasurer.  He was also unaware of whether KAI had named a secretary or had adopted any by-laws.  In 2001, Ms. Kummerfeld testified that KAI had never had a meeting of the shareholders, but that the board of directors met frequently, although no records were kept.  Mr. Kummerfeld testified in 2000 that he had never attended a meeting of the shareholders or board of directors.  In 2001, in another deposition taken by Cordius in its efforts to collect on its judgment, he stated that the shareholders and board of directors met, but that no records were kept of those meetings.

In 1997, KAI earned $35,045 in revenue, received $200,000 in loans from Mr. Kummerfeld, and incurred $661,746 in expenses.  In 1998, KAI earned $35,000 in revenue, received $318,500 in loans from Mr. Kummerfeld, and incurred $731,935 in expenses.  In 2000,

5

A-610

KAI earned $48,000 in revenue, received $412,500 in loans from Mr. Kummerfeld, and incurred $534,464 in expenses. Over the course of the years for which financial information has been made available,[2] KAI earned a total of only $118,045, received $931,000 in loans from Mr. Kummerfeld, and spent in excess of $1,920,000.

The expenses incurred by KAI included the following payments to Ms. Kummerfeld in 1997: $57,400 labeled "loan reimbursements," $3,741 to Ms. Kummerfeld for taxi services, $18,874.23 for meals, $9,025.30 for hotels, and $1,900 as petty cash. In 1998, Ms. Kummerfeld received $5,678.89 in petty cash, $3,411.40 for taxis, $6,747.83 for meals, and $42,789.00 for hotels. In 2000, Ms. Kummerfeld received $3,320 in petty cash, $12,901.82 for meals, and $40,611.05 for lodging.

In 1997, the Kummerfelds flew to Lisbon and Buenos Aires at KAI's expense. Mr. Kummerfeld states that only his wife was conducting KAI business at the time, but that he received his ticket free as part of a two-for-one ticket package. In 1999, KAI funds were used to pay lawyers representing Ms. Kummerfeld in connection with federal charges of wire fraud and mail fraud

---

[2] Cordius stated in its motion for a writ of execution that KAI and Ms. Kummerfeld failed to produce financial information for 1999, 2000, and 2001, despite Cordius's repeated demands. Mr. Kummerfeld has not disputed this point, and has not produced the missing information even though it is in his control as chairman and treasurer of KAI.

6

A-611

relating to a high-yield investment scheme.[3]  In 2001, Mr.
Kummerfeld used KAI's office space to operate a personal
business, but paid no share of the monthly rent of $20,000.  In
2000, 2001, and 2002, the Kummerfelds purchased box seats at the
U.S. Open to entertain KAI clients.  The price of these seats in
2000 was over $20,000.

Based on KAI's business losses, the Kummerfelds declared tax
deductions of $315,785 in 1997; $353,628 in 1998; and $417,189 in
2000.  In 2001, Mr. Kummerfeld took out a $650,000 mortgage on
his Cape Cod vacation home, appraised at approximately
$1,700,000.  He used the proceeds to loan approximately $400,000
to KAI.  Cordius has been unable to attach the property in
satisfaction of this Court's judgment because it is jointly held
by Mr. and Ms. Kummerfeld.

### Discussion

Rule 72, Fed. R. Civ. P., and the Federal Magistrates Act,
28 U.S.C. § 636(b)(1)(A), provide the standard for district court
review of a Magistrate Judge's order.  For dispositive matters, a
reviewing court "may accept, reject, or modify, in whole or in
part, the findings or recommendations made by the magistrate

---

[3] Ms. Kummerfeld was found guilty by a jury of one count of
conspiracy to commit wire fraud and one count of wire fraud in
connection with her participation in soliciting investors for a
high-yield bank note fraud.  The verdict was entered on August
17, 2001.  No. 00 Cr. 49 (KMW) (S.D.N.Y.).  She has not yet been
sentenced.

A-612

judge." 28 U.S.C. § 636(b)(1)(C). The court shall make a <u>de novo</u> determination of those portions of the Report to which objection is made. <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997).

1. <u>Rule 69 Proceeding</u>

Mr. Kummerfeld contends that this action was improperly commenced as a turnover proceeding rather than a plenary action. The Report correctly concluded that this Court retains jurisdiction to enforce its judgment of April 11, 2000, pursuant to Rule 69, Fed. R. Civ. P. Rule 69 provides that "process to enforce a judgment shall be a writ of execution, unless the court directs otherwise." Rule 69, Fed. R. Civ. P. An action to pierce the corporate veil is "not itself an independent . . . cause of action, but rather is a means of imposing liability on an underlying cause of action." <u>Peacock v. Thomas</u>, 516 U.S. 349, 354 (1996) (citation omitted); <u>Morris v. State Dep't of Taxation and Fin.</u>, 82 N.Y.2d 135, 141 (1993). An action to pierce the corporate veil in order to enforce a court's previous judgment is within the purview of Rule 69, Fed. R. Civ. P., and may be commenced as a petition for a writ of execution.

The Court's jurisdiction over this matter, however, is not ancillary. <u>Peacock</u>, 516 U.S. at 357 (action to pierce the corporate veil requires independent jurisdictional basis); <u>Epperson v. Entertainment Express, Inc.</u>, 242 F.3d 100, 105 (2d

8

A-613

Cir. 2001) (same).  Subject matter jurisdiction over this action

is based on the diversity of citizenship of the parties,

including Mr. Kummerfeld.[4]  28 U.S.C. § 1332.

Mr. Kummerfeld argues that this action falls outside the

scope of New York Civil Practice Law and Rules Section 5225(b),

cited in the Report as the applicable procedural rule.[5]  This

proceeding is based on the Court's authority to enforce its

judgment under Rule 69, Fed. R. Civ. P., and New York's

substantive law governing claims to pierce the corporate veil.

Rule 69's provision that the "procedure on execution . . . shall

be in accordance with the practice and procedure of the state in

which the district court is held" does not require that a

specific state rule of procedure apply to a given action.  HBE

Leasing Corp. et al. v. Frank, 48 F.3d 623, 633 n.7 (2d Cir.

1995) (the technical availability of Section 5225(b) is not

dispositive when the district court has jurisdiction).

---

[4] It is undisputed that Mr. Kummerfeld is a New York
resident, and Cordius is a trust organized and existing under the
laws of California.

[5] Section 5225(b) describes the procedure for the payment or
delivery of property not in the possession of the judgment debtor
as against "a person in possession or custody of money or other
personal property in which the judgment debtor has an interest,
or against a person who is a transferee of money other personal
property from the judgment debtor, where it is shown that the
judgment debtor is entitled to the possession of such property or
that the judgment creditor's rights to the property are superior
to those of the transferee."  N.Y. C.P.L.R. § 5225(b).

9

A-614

2. Pleadings

Mr. Kummerfeld argues that Coridus's Rule 69 motion should be dismissed because he was not served with the pleading required under Section 402, N.Y. C.P.L.R.[6] The Report correctly finds that Mr. Kummerfeld received sufficient notice of Cordius's motion to pierce the corporate veil and render his assets amenable to attachment and an opportunity to be heard in response to the motion, vindicating his due process rights. See Nelson v. Adams, 529 U.S. 460, 466-68 (2000).

Section 2001 permits a court to disregard a procedural irregularity if "a substantial right of a party is not prejudiced." N.Y. C.P.L.R. § 2001. Mr. Kummerfeld was served with a Notice of Petition, a Memorandum in Law in Support of Petition, and an Appendix of Exhibits in Support of Petition. These documents provide detailed descriptions of Cordius's claims and the evidence and legal arguments on which Cordius relies. No substantial right of Mr. Kummerfeld was infringed by the absence of a separate document labeled "Petition."

3. Service of Process

Mr. Kummerfeld claims that the proceeding must be dismissed because Cordius did not succeed in personally serving him with the petition, as is required under Section 403, N.Y. C.P.L.R.

---

[6] Section 402 states that "there shall be a petition, which shall comply with the requirements for a complaint in an action ...." N.Y. C.P.L.R. § 402.

10

A-615

The Report notes that Cordius attempted personal service upon Mr. Kummerfeld at KAI, but was informed that Mr. Kummerfeld had moved and left no forwarding address.[7] Cordius then sent a certified copy of the petition and accompanying papers to Mr. Kummerfeld at his home address and another copy to Mr. Kummerfeld's previous attorney in this action. The Report concludes that Cordius reasonably relied on this Court's prior Opinion in this action, No. 99 Civ. 3200 (DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000), which authorized Cordius to serve Mr. Kummerfeld by mail, based in part on his purposeful attempts to evade service.

There is no dispute that Mr. Kummerfeld received the papers in this action, and that he filed a response with the Court. He argues, however, that the petition should be dismissed because the Court's prior authorization of service by mail does not extend to this petition initiating a new and independent action. As stated above, an action to pierce the corporate veil is a means of imposing liability on an underlying cause of action. Cordius made a good faith effort to serve Mr. Kummerfeld personally, and, when that failed, reasonably relied upon this Court's prior authorization in this litigation of alternative

_____

[7] Cordius also included with its petition an affidavit stating that it planned to send a process server to Mr. Kummerfeld's personal address. A previous Opinion in this litigation found that Mr. Kummerfeld's doorperson refused to permit access. No. 99 Civ. 3200 (DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000).

11

A-616

service on Mr. Kummerfeld by certified mail.

4. Mr. Kummerfeld's Motion to Dismiss

A court may dismiss an action pursuant to Rule 12(b)(6) only
if "it appears beyond doubt, even when the complaint is liberally
construed, that the plaintiff can prove no set of facts which
would entitle him to relief." Jaghory v. New York State Dep't of
Educ., 131 F.3d 326, 329 (2d Cir. 1997) (citations omitted).  In
construing the complaint, the court must "accept all factual
allegations in the complaint as true and draw inferences from
those allegations in the light most favorable to the plaintiff."
Id.  "Given the Federal Rules' simplified standard for pleading,
a court may dismiss a complaint only if it is clear that no
relief could be granted under any set of facts that could be
proved consistent with the allegations." Swierkiewicz v. Sorema,
N.A., 534 U.S. 506, 514 (2002).[8]

---

[8] Mr. Kummerfeld has raised several procedural objections
related to his motion to dismiss.  He contends that his motion to
dismiss should be granted because Cordius has defaulted by not
filing any opposition.  While the failure to respond to a motion
may in certain circumstances provides grounds for the granting of
the motion by default, Mr. Kummerfeld is not entitled to such
relief.  See Local Rule 7.1 ("Willful failure to [file a
memorandum of law] may be deemed sufficient cause for the . . .
granting of a motion by default.") (emphasis supplied).  Judgment
by default is inappropriate in this matter given that Cordius has
pursued this lawsuit over several years and at considerable
expense.  Although Cordius wrote Judge Ellis in June 2003
expressing its intent to withdraw the petition, Cordius
subsequently informed Judge Ellis that it desired to pursue the
requested relief.
   Mr. Kummerfeld contends that he should have been permitted
to present his claims at oral argument.  There is, however, no

12

A-617

Mr. Kummerfeld filed a motion to dismiss this action pursuant to Rules 12(b)(5) and 12(b)(6), Fed. R. Civ. P., on procedural grounds already addressed and on the ground that Cordius failed to state a viable claim for relief.  The Report recommended denial of the motion to dismiss.

Mr. Kummerfeld argues that the Report erred in recommending denial of his motion to dismiss when Cordius did not allege that Mr. Kummerfeld exercised dominion and control over KAI with respect to the transaction at issue -- KAI's failure to satisfy the judgment entered by this Court.  Cordius's petition alleges the following.  Judgment was entered in March 2000 and was affirmed by the Court of Appeals in November of that year.  Mr. Kummerfeld has been chairman and treasurer of KAI since its founding and remains in those positions.  He loaned KAI over

---

right to oral argument on a motion to dismiss or a motion for summary judgment.  Greene v. WCI Holdings Corp., 136 F.3d 313, 315-16 (2d Cir. 1998).
    Mr. Kummerfeld also argues that because he moved to dismiss Cordius's claims, he had no opportunity to answer and to assert any affirmative defenses to this action.  Mr. Kummerfeld's opposition to the Cordius motion included evidentiary submissions and substantive arguments in opposition to the merits, as well as a motion to dismiss based on asserted procedural defects.  Judge Ellis, who supervised the litigation for approximately a year and held several conferences with the parties, concluded that neither party wished to supplement the record.  He considered the matter fully submitted and issued a Report reaching the merits of Cordius's petition.  Mr. Kummerfeld has provided no basis to question Judge Ellis's description of the proceedings before him or the judgment that the record was complete.  Even now, Mr. Kummerfeld has not identified any affirmative defense that he wishes to assert that he did not present to Judge Ellis.

13

A-618

$400,000 -- roughly eight times KAI's income -- in 2000, and approximately the same amount in 2001. Mr. Kummerfeld was reimbursed for expenses incurred in his capacity as chairman in December 2000, and traveled internationally on KAI business in 2001. The petition sufficiently alleges that Mr. Kummerfeld exercised dominion and control over KAI when it failed to pay the judgment owed to Cordius.

Mr. Kummerfeld further contends that the Report erred in recommending denial of his motion to dismiss since Cordius did not allege that he committed any actionable fraud or wrongdoing against it. He argues Cordius does not point to evidence establishing that he was aware of his wife's fraudulent activities at the time that he made loans to KAI. The wrong Mr. Kummerfeld is alleged to have perpetuated is KAI's failure to satisfy the judgment entered by this Court. Cordius alleges judgment was entered by this Court in April 2000 and affirmed in November. The petition includes as exhibits the deposition testimony taken of Mr. Kummerfeld in December 1999, January 2000 and November 2001 in relation to this judgment. The petition alleges that Mr. Kummerfeld continued to act as chairman, treasurer and lender to KAI when it failed to pay the judgment owed to Cordius. Cordius has sufficiently alleged that Mr. Kummerfeld used his domination of KAI to perpetuate a wrong against the plaintiff.

14

A-619

5. Cordius's Motion to Pierce the Corporate Veil

In a special turnover proceeding based on New York law, made applicable pursuant to Rule 69, Fed. R. Civ. P., "a court may grant summary relief where there are no questions of fact, but it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter." HBE Leasing, 48 F.3d at 633 (citation omitted).[9]  Summary relief may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings.  Rule 56(e), Fed. R. Civ. P.; accord Burt Rigid Box, Inc. v. Travelers

_____

[9] In his objections, Mr. Kummerfeld argues that he is entitled to have a jury consider his defense to Cordius's petition, but does not dispute the applicable standard for summary relief.

15

A-620

Property Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).[10]

Under New York law, a court may pierce the corporate veil "where 1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." MAG Portfolio Consult v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001); American Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997). It bears emphasis that domination alone is insufficient to justify piercing the corporate veil. Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997). The plaintiff must show that the dominator's control over the corporation was utilized to perpetuate a fraud or wrong injuring the plaintiff. Id. New York courts are reluctant to pierce the corporate veil, but are guided by principles of equity in determining whether to disregard the corporate form. William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 600 (2d Cir. 1989); Brunswick Corp. v. Waxman, 599 F.2d 34, 36 (2d Cir. 1979).

To determine whether a company is dominated, courts consider many factors, including the following: (1) disregard of corporate

_____

[10] This Court's opinion in West Tsusho, Ltd. v. Prescott Bush & Co., Inc., No. 92 Civ. 3378 (DLC), 1994 WL 710798 (S.D.N.Y. Dec. 20, 1994), on which Mr. Kummerfeld relies, does not establish a different standard for the grant of summary judgment on a motion to pierce the corporate veil. In that case, unlike the present action, material issues of fact were raised that precluded summary judgment. Id. at *3.

16

A-621

formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the alleged dominator and the corporation are at arms length; (8) whether the corporation is treated as independent profit center; (9) whether others pay or guarantee debts of the dominated corporation; and (10) intermingling of property between the alleged dominator and the corporation.  MAG Portfolio, 268 F.3d at 63.  Whether to pierce the corporate veil requires a fact-specific inquiry in which no single factor is decisive.  Freeman, 199 F.3d at 1053.

The Report concludes that Mr. Kummerfeld dominated KAI to the point that the corporation served as an alter ego for him and his wife, finding specifically that KAI disregarded corporate formalities, that KAI was inadequately capitalized, that the Kummerfelds appropriated KAI funds for their own use, and that the Kummerfelds mingled their personal funds with KAI funds.  The Report finds that Mr. Kummerfeld's continued funding and management of KAI before and after this Court's judgment perpetuated KAI's wrong against Cordius.  The Report therefore recommends that KAI's corporate veil be pierced to render Mr. Kummerfeld's assets subject to attachment.

17

A-622

Mr. Kummerfeld objects to the Report's recommendation that Cordius be awarded summary relief on the ground that there are material issues of fact with respect to whether he dominated KAI and whether his domination perpetuated a wrong that injured Cordius.[11] With respect to the domination element, Mr. Kummerfeld argues that he presented evidence raising a material issue of fact with respect to each of the factors on which the Report relied to support its conclusion that Mr. Kummerfeld dominated KAI with respect to its failure to satisfy this Court's judgment.

The Report concludes that KAI failed to observe corporate formalities. Mr. and Ms. Kummerfeld are the sole officers and shareholders of KAI; she is president, and he is chairman of the board and treasurer. In 1999, however, Kummerfeld could not recall if a secretary or treasurer had been named upon KAI's

---

[11] Mr. Kummerfeld also raises an evidentiary objection to the Report's reliance on the deposition testimony of Ms. Kummerfeld. He argues that the testimony should be excluded pursuant to Rule 804(b)(1), Fed. R. Civ. P., because Ms. Kummerfeld is an available witness and Mr. Kummerfeld was not a party to the original action and did not have a motive and opportunity to cross-examine her at previous depositions. It is unnecessary to address the potential bases for the receipt of this evidence. Mr. Kummerfeld did not raise this evidentiary objection in papers submitted to Judge Ellis, and, in fact, relied on his wife's deposition testimony in both his motion to dismiss and his objections to the Report. Mr. Kummerfeld has waived this objection by failing to raise it before Judge Ellis and by relying on Ms. Kummerfeld's testimony. It is worth noting, moreover, that this evidence is not critical to the resolution of this action.

18

A-623

formation, or if there had ever been a shareholder meeting or meeting of the board of directors. In 2001, Mr. Kummerfeld stated that the board of directors had met during that year, but that no minutes or official records were kept of the meeting. Mr. Kummerfeld's argument that KAI is a functioning company does not raise a material issue of fact with respect to the Report's conclusion that KAI failed to observe corporate formalities.[12]

The Report concludes that KAI was inadequately capitalized. In 2000, KAI's expenses were approximately $534,464 and its revenue totaled only $48,000. Even Mr. Kummerfeld's loan of $412,500 was not sufficient to cover KAI's expenses. The financial data for KAI in 1997 and 1998 reveal even greater shortfalls, suggesting a pattern of undercapitalization that continued after judgment was entered against KAI by this Court.[13] KAI was undercapitalized even with Mr. Kummerfeld's infusion of personal funds. His argument that KAI was adequately funded because he loaned the corporation money is misplaced and does not

---

[12] Mr. Kummerfeld's citation to In re Stylemaster Department Store, Inc., 154 N.Y.S.2d 58, 61 (N.Y. Sup. Ct. Westchester Co. 1956), is misplaced. The requirements under New York law for the election of directors and officers to a close corporation do not alter the Court's analysis of whether KAI disregarded corporate formalities.

[13] Mr. Kummerfeld stated in his 2001 deposition that he continued to fund KAI in "a similar fashion" during that year, although no financial data for KAI during that year has been provided.

19

A-624

create a question of fact.[14]

The Report concludes that the Kummerfelds appropriated KAI funds for their own use.  For instance, KAI funds were used to pay lawyers who represented Ms. Kummerfeld·in relation to a subpoena issued by federal prosecutors in Ohio and to federal charges of wire fraud and conspiracy to commit wire fraud, of which·she was convicted in the Southern District of New York. Mr. Kummerfeld does not dispute this fact.  Further, Mr. Kummerfeld operated his business out of the KAI offices, but did not pay any rent to KAI.  Mr. Kummerfeld offers no documentation or other evidence to support his bald assertion that the rent-free arrangement was a form of repayment for his loans to the corporation.  He has failed to raise a question of fact regarding the owners' appropriation of KAI funds for their own use.

The Report concludes that the Kummerfelds engaged in the commingling of their personal funds and those of KAI.  Mr. Kummerfeld infused substantial sums of money into KAI during the years of 1997, 1998, and 2000.  In 2001, he mortgaged his home on Cape Cod, deposited the funds in his personal account, and used

---

[14] These figures were utilized by Cordius in its petition to pierce the corporate veil and were relied upon by Judge Ellis in his Report.  Mr. Kummerfeld has waived his right to object to this evidence by failing to raise any objection before Judge Ellis or in his initial objections to the Report.  His untimely claim in his recent reply that he has not yet had a chance to review the financial evidence provided by Cordius deserves no consideration.

A-625

the proceeds to pay KAI's debts and back rent.  In 1997, Ms.
Kummerfeld withdrew funds, characterized as "loan
reimbursements," in excess of $50,000.  Mr. Kummerfeld has
provided no support for his argument that this disbursement was a
repayment for a loan Ms. Kummerfeld had previously made to KAI
rather than the comingling of personal and KAI funds.[15]

. Mr. Kummerfeld has not raised a material issue of fact with
respect to his domination of KAI.  The record supports the
conclusion that KAI disregarded corporate formalities and was
inadequately capitalized, and that the Kummerfelds appropriated
KAI funds for personal use and commingled their funds with those
of KAI.  In addition, the facts discussed above indicate that KAI
was not treated as an independent profit center and that Mr.
Kummerfeld paid KAI's debts.[16]

---

[15] Mr. Kummerfeld relies on American Fuel, 122 F.3d at 135,
for the proposition that by loaning money to KAI without
transferring KAI funds into his personal account, he treated KAI
as a separate entity.  In American Fuel, there was no evidence
that either of the two owners, each of whom was an active
participant in the business, ever withdrew funds from the
business for their own use.  Id.  Here, however, KAI funds were
transferred to Ms. Kummerfeld for her personal use and were used
to provide personal benefits to Mr. Kummerfeld.

[16] The records of KAI's finances made available by KAI for
the years 1997, 1998, and 2000 describe a pattern of behavior by
Mr. Kummerfeld supported by testimony concerning his interaction
with KAI during 2001.  Given this evidence, the burden was on Mr.
Kummerfeld raise a material issue of fact.  He failed to provide
financial records related to the years 1999, 2002, and 2003,
although those records are in his control and have been requested
by Cordius.

A-626

In sum, Mr. Kummerfeld has raised no material issue of fact concerning his domination of KAI. He has not genuinely disputed Judge Ellis's findings that KAI disregarded corporate formalities, that KAI was inadequately capitalized, that the Kummerfelds appropriated KAI funds for their own use, and that the Kummerfelds intermingled their personal funds with those of KAI. Mr. Kummerfeld has not presented evidence related to these or to any other factor relevant to a piercing analysis to raise a disputed issue regarding a material fact or to provide a basis upon which a reasonable jury could find in his favor.

Similarly, Mr. Kummerfeld has not provided evidence genuinely disputing the Report's conclusion that his domination of KAI was used to perpetuate a wrong injuring Cordius, namely the failure of KAI to satisfy the judgment in this action. Mr. Kummerfeld was deposed three times in relation to the underlying action, and Mr. Kummerfeld does not contend that he was unaware of the judgment entered by this Court. He continued to loan substantial amounts to KAI, without which it likely would not have been able to continue, and continues to act as chairman of the board and treasurer. In 2001, he utilized KAI's office space and its seats to the U.S. Open, and traveled to Kuala Lampur for what he asserts was KAI business. Since the entry of judgment in March 2000, KAI has not made a single payment in satisfaction of the judgment owed to Cordius. Mr. Kummerfeld's contention that

22

A-627

he was unaware of the fraud committed by Ms. Kummerfeld and KAI prior to the entry of the judgment is not relevant to his participation in KAI's failure to satisfy the judgment entered by this Court.

Considering the facts specific to this action, it is necessary to pierce the corporate veil of KAI and render Mr. Kummerfeld's assets amendable to attachment in order to enforce this Court's prior judgment and to achieve equity in this matter. The Report's recommendations are adopted.

### Conclusion

Mr. Kummerfeld's motion to dismiss is denied. Cordius's motion for a writ of execution and turnover order piercing the corporate veil of KAI and rendering Mr. Kummerfeld's assets amenable to attachment is granted.

SO ORDERED:

Dated:      March 30, 2004
            New York, New York

_____
                DENISE COTE
        United States District Judge

23

A-628

Do #99

S. DISTRICT COURT
FILED
S.    APR 30 2004
S. D. OF N. Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------    X
                                                      :
CORDIUS TRUST,                                        :
                                                      :    Case No. 99 Civ. 3200 (DLC)
                    Plaintiff,                        :
                                                      :
        - against -                                   :
                                                      :    JUDGMENT
KUMMERFELD ASSOCIATES, INC. and                       :
ELIZABETH KUMMERFELD,                                 :    #04/0832
                                                      :
                    Defendants.                       :
--------------------------------------------------    :
                                                      :
CORDIUS TRUST,                                        :
                                                      :
                    Petitioner,                       :
                                                      :
        - against -                                   :
                                                      :
DONALD D. KUMMERFELD,                                 :
                                                      :
                    Respondent.                       :
--------------------------------------------------    X

This action having come on for trial between the plaintiff, Cordius Trust, and the

defendants, Kummerfeld Associates, Inc. and Elizabeth Kummerfeld, before the Court, The

Honorable Denise L. Cote, United States District Judge presiding, the issues having been duly

tried, and the Court having rendered its decision and entered judgment in favor of the plaintiff

and against the defendants in the amount of $1,418,000.00 plus pre-judgment interest of

$111,011.87 and post-judgment interest at the statutory rate of 6.87% per annum, plus attorneys

fees of $72,840.73;

The defendants having failed to satisfy any portion of said judgment; and

# EXHIBT 5

Doc #77

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ X

CORDIUS TRUST,

           Plaintiff,

      - against -

KUMMERFELD ASSOCIATES, INC. and
ELIZABETH KUMMERFELD,

           Defendants.

------------------------------------------------

CORDIUS TRUST,

           Petitioner,

      - against -

DONALD D. KUMMERFELD,

           Respondent.

------------------------------------------------ x

Case No: 99 Civ. 3200 (DLC)

JUDGMENT

#04,0832

This action having come on for trial between the plaintiff, Cordius Trust, and the defendants, Kummerfeld Associates, Inc. and Elizabeth Kummerfeld, before the Court, The Honorable Denise L. Cote, United States District Judge presiding, the issues having been duly tried, and the Court having rendered its decision and entered judgment in favor of the plaintiff and against the defendants in the amount of $1,418,000.00 plus pre-judgment interest of $111,011.87 and post-judgment interest at the statutory rate of 6.87% per annum, plus attorneys fees of $72,840.73.

The defendants having failed to satisfy any portion of said judgment; and

The plaintiff Cordius Trust thereafter moved pursuant to Federal Rule of Civil Procedure 69 for the issuance of a writ of execution and turnover order piercing the corporate veil of Kummerfeld Associates, Inc. in order to render respondent Donald Kummerfeld's assets amenable to attachment, and that motion having been referred to United States Magistrate Judge Ronald L. Ellis and Judge Ellis having duly considered the motion, Judge Ellis thereafter issued a Report and Recommendation to which the respondent Donald D. Kummerfeld objected; and

Upon the objection of the respondent Donald D. Kummerfeld, the Court, The Honorable Denise L. Cote, United States District Judge presiding, did consider the motion of Cordius Trust *de novo*, upon the submissions of the parties without oral argument, and the Court having rendered its decision granting the writ of execution and turnover order,

IT IS ORDERED AND ADJUDGED that plaintiff Cordius Trust recover from Donald Kummerfeld damages in the amount of $1,418,000.00 plus pre-judgment interest of $135,486.74 and post-judgment interest at the statutory rate of 6.87% per annum, which post-judgment interest totals $429,081.44 through April 10, 2004 and continues to accrue at the statutory rate, plus attorneys fees and costs in the amount of $72,840.73.

Dated at New York, New York, this 30th day of April, 2004

_____
The Honorable Denise L. Cote
United States District Judge


THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 5/8/04

2