# EXHIBIT 6

## DECLARATION OF DEFENDANT OR OFFENDER
## NET WORTH & CASH FLOW STATEMENTS

I, Elizabeth Miller Kummerfeld _____, residing at 106 Central Park South _____

in the city (or county) of New York _____, in the state of New York _____

have completed the attached [x] Net Worth Statement (Prob. Form 48) or [ ] Net Worth Short Form Statement (Prob. Form 48EZ) and/or [x] Cash Flow Statement (Prob. Form 48B) that fully describe my financial resources, including a complete listing of all assets owned or controlled by me as of this date and any transfers or sales of assets since my arrest. The Cash Flow Statement (Prob. Form 48B) also includes my financial needs and earning ability and the financial needs and earning ability of my spouse (or significant other) and my dependent(s) living at home.

Net Worth Statement (Total pages, including additional pages ___8__)
Net Worth Short Form Statement (Total pages, including additional pages ___1__)
Cash Flow Statement (Total pages, including additional pages _____)

[x] I declare under penalty of perjury that the foregoing is true and correct; or

[ ] False statements may result in revocation of supervision, in addition to possible prosecution under the provisions of 18 U.S.C. § 1001, which carries a term of imprisonment of up to 5 years and a fine of up to $250,000, or both.

_____
(Defendant Signature)

Executed on

10th day of June, 2002

_____
No tary Public

ANDREA P. JAMES
Notary Public, State of New York
No. 03-4816071
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires July 31, 2002

Page 1 of 2

# REQUEST FOR NET WORTH STATEMENT FINANCIAL RECORDS

| DEFENDANT'S FULL NAME | DOCKET NUMBER |
|---|---|
| Elizabeth Miller Kummerfeld | 00-CR-0049 (KMW) |

All items on the Net Worth Statement must be accompanied by supporting documentation. Provide the probation officer with all records listed below that are applicable to your financial statements, along with your completed Net Worth Statement by the close of business.

## ASSETS

### Section A - Bank Accounts

♦ Most recent bank account statements (e.g., checking, savings, credit union, money market, brokerage, Certificate of Deposit, or savings bonds) for a three-month period, along with canceled checks.

### Section B - Securities

♦ Most recent securities account statements (e.g., brokerage, annuities, life insurance, IRA, KEOGH, 401K, or thrift savings account) for a three-month period.

### Section C - Notes & Accounts Receivable

♦ Copy of signed note receivable.

### Section D - Life Insurance

♦ Copy of all life insurance policies (e.g., whole life, variable life, term).

### Section E - Safe Deposit Boxes or Storage Facilities

♦ Copy of most recent rental invoice for all safe deposit boxes or storage facility rentals within the past year, including receipts or verification of content value.

### Section F - Motor Vehicles

♦ Copy of vehicle registration and title for all vehicles owned or leased.

### Section G - Real Estate

♦ Copy of purchase agreement, deeds, and escrow statement for all real property.

### Section H - Mortgage Loans Owed To You

♦ Copy of the sales agreement and escrow statement for all real property.

### Section I - Other Assets

♦ Copy of purchase invoice and appraisal (if already previously obtained), and documentation to verify the fair market value of the asset.

### Section J - Anticipated Assets

♦ Copy of documentation to verify future receipt of anticipated asset, (e.g., claim or lawsuit filings, profit sharing plan and current statement, pension plan and current statement, inheritance documents, copy of all trusts, trust income tax returns, and most recent accounting reflecting the value of your interest and income from the trust.

### Section K - Business Holdings

♦ In addition to providing the information requested in Section K and completing Section N, provide copies of all income tax returns for each business you had an ownership interest in (e.g., shareholder, partner, proprietor) or an affiliation with (e.g., officer, director, board member, agent, associate) within the last five years. Also provide all financial statements for each business, prepared by you or your accountant, within the past five years.

### Business Accounts Receivable

♦ Copy of current month's billing statements that verify business accounts receivable.

### Business Accounts Payable

♦ Copy of current month's vendor invoices that verify business accounts payable.

### Section L - Income Tax Returns

♦ Copy of the five most recent years' income tax returns filed for: Individual (Form 1040), Partnership (Form 1065), Corporation (Form 1120), S Corporation (Form 1120S), and Limited Liability Company (Form 1065). Be sure to include all related schedules and forms. Provide a written explanation for any returns not filed.

### Section M - Transfer of Assets

♦ Copy of the bill of sale, documentation of funds received from sale (e.g., a personal or business check, cashiers check or money order), copy of vehicle registration and title of sold vehicle, and escrow closing statements for any real estate sold since the date of your arrest.

### Section N - Names of Shareholders or Partners

♦ Copy of Articles of Incorporation for all corporations you own or have an interest in. Copy of partnership agreement for all partnerships you have an ownership interest in.

Last name: **Kummerfeld**

# NET WORTH STATEMENT

NOTE: I = Individual   J = Joint   S = Spouse/Significant Other   D = Dependent

## ASSETS

**BANK ACCOUNTS** (Include all personal and business checking and savings accounts, credit unions, money markets, certificates of deposit, IRA and KEOGH accounts, Thrift Savings, 401K, etc.)

| | I/J S/D | Name of Institution | Address | Type of Account | Account Number | Personal or Commercial | Balance |
|---|---|---|---|---|---|---|---|
| Section A | I | JPMorgan Chase Bank | 410 Park Ave. NYC | Checking | 040279634 | Personal | 500.00 |
| | I | JPMorgan Chase Bank | 410 Park Ave. NYC | Savings | 040375439 | Personal | 40.00 |
| | I | JPMorgan Chase Bank | 410 Park Ave. NYC | Money Mkt Fund | 040335801 | Personal | 70.00 |
| | S | JPMorgan Chase Bank | 410 Park Ave. NYC | Checking | 469004273465 | Personal | 3000.00 |
| | J | JPMorgan Chase Bank | 410Park Ave. NYC | Checking | 469501028465 | Commercial | 1000.00 |
| | J | Citibank | 1345 Ave. of Am.NYC | Checking | 285 000345 | Personal | 500.00 |

**SECURITIES** (Include all stocks in public corporations, stocks in businesses you own or have an interest in, bonds, mutual funds, U.S. Government securities, etc.)

| | I/J S/D | Name and Kind of Security | Location of Security | Number of Units | Fair Market Value |
|---|---|---|---|---|---|
| Section B | I | TIAA Retirement Fund | 730 Third Avenue, NYC 10017 | — | 21,264.60 |
| | S | IRA Mutual Fund | Baird Patrick & Co.: 20 Exchange Place, NYC | — | 10,435.00 |
| | S | Magazine Publishers of America Retirement Plan | MassMutual Retirement Group | | 340,555.80 (not available as a liquid asset) |

**MONEY OWED TO YOU BY OTHERS** (Include all money owed to you by any person or entity.)

| | I/J S/D | Name and Address of Debtor | Amount Owed to you | Reason Owed to You | Date Money Loaned | Relationship To Debtor (if any) | Monthly Payment Or Date Full Payment Expected | Is Debt Collectible ? |
|---|---|---|---|---|---|---|---|---|
| Section C | J | Nobu O. Knight Address unknown | 80,640 + | Business loan | 2000 | Business Acquaintance | — | Doubtful |
| | J | Hampton Mercantile Corp.. Current Address unknown | 53,000 | Business loan | 10/1993 | Subtenant | — | No (statute of limitations) |
| | J | DSL Capital Inc. Current address unknown | 300,000 | Unpaid rent | 11/1993 | Subtenant | — | No (statute of limitations) |
| | I | DSL Capital, Inc. Current Address unknown | 26,500 | Personal loan | 11/1993 | Subtenant | — | No (statute of limitations) |

Initials _EMK_    Date _6/10/02_

Last name: Kummerfeld

## LIFE INSURANCE (Include type of policy [whole life, variable, or term], face amount of coverage] and cash surrender value of the investment portion of a whole life or variable policy.

**Section D**

| I/J S/D | Name & Address of Company and Name of Beneficiary | Policy Number | Type of Policy | Face Amount | Cash Surrender Value | Amount Borrowed | Amount You Can Borrow |
|---|---|---|---|---|---|---|---|
| S | Mutual Life Insurance Company of N.Y: P.O. Box 4830, Syracuse, NY Beneficiary: Elizabeth | 902 27 29 | Whole Life | 5000.00 | 343.57 | 2,353.75 | 737.00 |
| I | Allstate Life Insurance Company of NY, PO Box 94056, Palatine IL | 11119920 42433 | Accidental /Life | 400,00 0 | none | none | none |

## SAFE DEPOSIT BOXES OR STORAGE SPACE FACILITY (Include all safe deposit boxes or storage space you rent or places you have access to in which others are holding assets or items belonging to you.)

**Section E**

| I/J S/D | Name and Address of Box of Facility Locations | Box Number Or Space | Contents | Fair Market Value |
|---|---|---|---|---|
| | None | | | |

## MOTOR VEHICLES (Include all cars, trucks, mobile homes, motorcycles all terrain vehicles, boats, airplanes, etc.)

**Section F**

| I/J S/D | Year, Make & License Number/Vehicle Identification Number | Mileage | Loan/Lease Balance (if any) | Date Loan/Lease will be Paid Off or Ends | Monthly Payment | Fair Market Value |
|---|---|---|---|---|---|---|
| S | 2000 Jaguar BZ913103/ H299HL: SAJDA01C1YFL75591 | 15,000 | 9,014.00 | Lease Expires in June 2003 | 643.85 | --- |

## REAL ESTATE (Include property, parcels, lots, timeshares, and developed land with buildings)

**Section G**

| I/J S/D | Real Estate Address (Include county and state) Mortgage Company or Lien Holder | Purchase Date | Purchase Price | Mortgage Balance | Date Mortgage will be Paid Off | Monthly Payment | Fair Market Value |
|---|---|---|---|---|---|---|---|
| J | 19 Muskrat Lane, Brewster, Barnstable, MA: 02640 Washington Mutual | December 1970 Addition built 1978 | 55,000.00 20,000.00 (cost of addition) | 640,000.00 | July 28, 2031 | 4,394.00 | 800,000.00 |

## MORTGAGE LOANS OWED TO YOU: (Include name, address, and relationship [if any] to the mortgagee [the party that bought the real estate you sold and is making payments to you])

**Section H**

| I/J S/D | Mortgagee (Name & Address) Relationship to Mortgagee | Mortgage Balance | Date Mortgage will be Paid Off | Balloon Payment? If Yes, Date? | Monthly Payment | Is Debt Collectible ? |
|---|---|---|---|---|---|---|
| | None | | | | | |

Initial : _EMK_   Date: _6/10/02_

Last name: Kummerfeld

## Section I

**OTHER ASSETS:** (Include any cash on hand, jewelry, art ,paintings, coin collections, stamp collections, collectibles, antiques, copyrights, patents, etc.).

| I/J S/D | Description | Loan Balance (if any) | Date Loan Will be Paid Off | Monthly Payment | Where is Asset Located ? | Fair Market Value |
|---|---|---|---|---|---|---|
| S | Assorted works of art | | | | New York City | unknown |
| S | Assorted jewelry | | | | New York City | unknown |

## Section J

**ANTICIPATED ASSETS** (Include any assets you expect to receive or control from lawsuits for compensation or damages , profit sharing, pension plans, inheritance, wills or as an executor or administrator of any succession or estate.)

| I/J S/D | Amount Received or Expected to Receive | Date Expected to Receive | Reason You Expect This | Name and Address of Person or Company That Can Verify This (e.g.attorney, financial institution, executor) |
|---|---|---|---|---|
| | None | | | |

**TRUST ASSETS:** (Include all trusts in which you are a grantor or donor [the person who establishes the trust], the trustee or fiduciary [who controls the trust assets and income or the beneficiary who has or will receive benefits from the trust].)

| I/J S/D | Name of Trust/ Taxpayer ID# | Value of Trust | Your Annual Income From Trust | Your Interest in Trust Assets |
|---|---|---|---|---|
| | None | | | |

## Section K

**BUSINESS HOLDINGS** ( Include all businesses in which you have an ownership interest or with which you had an affiliation within the last three years, e.g. self-employed sole proporietor, officer, shareholder, board member, partner, associate, etc.) Complete Section N.  (attach additional pages, if necessary )

| I/J S/D | Name and Address of Business/Taxpayer I.D. # | Type of Business Entity | Industry of Business | Date Business Started | Capital Invest- ment to Start | Your ownership Interest Percentage | Sale Price or Fair Market Value of Your Interest |
|---|---|---|---|---|---|---|---|
| J | Kummerfeld Associates,Inc. 70 E. 55th Street,NY 10022 ID#: 13-3390985 | S Corp. - Consulting | Finance Publishing | 1985 | $60,000 | 50%/50% Husband / Wife | — |
| I | Pinnacle Development Corp. 3401 Hartford St. Broken Arrow, OK ID# 133580839 | Corp.- Exploration and Developmnt | Oil and Gas | 1986 | 50,000 | 16.66% | Approx. $5,000.00 |
| | | | | | | | |

Initial : _Elu a_   Date: _6/10/02_

Last name:  Kummerfeld

## INCOME TAX RETURNS

| | Type of Income Tax Return Filed | Last Filing Year | Years of Last 5 Income Tax Returns You will submit to the Probation Officer |
|---|---|---|---|
| **Section L** | Individual (Form 1040) | 2000 | 1996, 1997, 1998, 1999, 2000 |
| | Partnership/ Limited Liability Company (Form 1065) | 2001 | 2000, 2001 |
| | Corporation (Form 1120) | 2001 | 2000, 2001 |
| | S Corporation (Form 1120S) | 2000 | 1996, 1997, 1998, 1999, 2000 |

## TRANSFER OF ASSETS (Include any assets you have transferred or sold since the date of your arrest with a cost or fair market value of more than $500.00. Also list any assets that someone else is holding on your behalf)

| | I/J S/ D | Description of Asset/ Reason Transferred/Sold | Date of Transfer/Sale | Original Cost | Amount You Received If Any | Name of Purchaser or Person Holding the Asset | Sale Price or Fair Market Value at Transfer |
|---|---|---|---|---|---|---|---|
| **Section M** | | None | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## NAMES OF SHAREHOLDERS OR PARTNERS (Include all shareholders, officers, and/or partners indicating each respective ownership interest.)

| | Name of Business | Names of shareholders/Partners | Ownership Interest Percentage |
|---|---|---|---|
| **Section N** | Kummerfeld Associates, Inc. | Donald David Kummerfeld Elizabeth Miller Kummerfeld | 50% each |
| | Pinnacle Development Corporation | Kenneth Gestal, Richard Grossman, William Kenny, Elizabeth Kummerfeld, Laurence Neuman, Richard Sorota | 16.66% for each shareholder |
| | | | |

Initial : _Ellee_    Date: _6/10/02_

&PROB =8
(REV 9:00)

Page 6 of __8__

Last Name -

**Section O**

ASSETS YOU WILL LIQUIDATE (Include all assets you intend to liquidate to satisfy any criminal monetary penalties that may be imposed.)

| Asset Description | Estimated Value of Asset | Date You Will Liquidate | Current Location of Asset (if real property, county and state) |
|---|---|---|---|
| NONE | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Section P**

PROSPECT OF INCREASE IN ASSETS (Give a general statement of the prospective increase of the value of any asset you own.)

NONE

Initials *EMC*  Date 6/10/02

**Last name: Kummerfeld**

## LIABILITIES

**CHARGE ACCOUNTS AND LINES OF CREDIT:** (Include all bank credit cards, lines of credit, revolving charge accounts, etc.).

**Section A**

| I/J S/D | Type of account or Card | Name and Address of Creditor | Credit Limit | Amount Owed | Credit Available | Minimum Monthly Payment |
|---|---|---|---|---|---|---|
| I | Overdraft Line of Credit | JPMorgan Chase Bank 410 Park Ave. New York, NY 10022 | 27,800.00 | 27,800.00 | 0 | Average 900.00 - 1000.00 |
| J | Citibank EZ checking (Overdraft Account) | Citibank 1345 Ave of the Americas New York, NY 10105 | 25,000.00 | 23,495.84 | 1,852.71 | Varied 500.00-1000.00 |
| J | CITI AAdvantage VISA Card | Citicorp. Box 6500 Sioux Falls, SD 57117 | 18,000.00 | 14,671.28 | 3,328.00 | Varied 200.00-300.00 |
| J | DISCOVER/VISA | Discover Card P.O. Box 15251, Wilmington, DE | 6,900.00 | 5,962.88 | 937.00 | Varied 100.00-250.00 |
| J | American Express Corporate Account | American Express P.O. Box 2855, New York, NY | No Limit | 950.03 | -- | Monthly Full amount due |
| J | Diners Club | Diners Club: 8725 W. Sahara Ave. The Lakes, NV 89117 | 10,000.00 | 7,251.00 | 3000.00 | Varied 800.00-1,500.00 |
| S | First Union VISA | Bank Card Services: P.O. Box 15137, Wilmington, DE | 7,400.00 | 6,124.15 | 1,275.85 | Varied 150.00 – 200.00 |

**OTHER DEBTS:** (Include mortgage loans, notes payable, delinquent taxes, and child support )

**Section B**

| I/J S/D | Owed To | Address | Relationship (if any) | Amount Owed | Reason Owed | Monthly Payment |
|---|---|---|---|---|---|---|
| S | Washington Mutual | P.O. Box 1093 Northridge, CA 91328 | Mortgage Lender | 644,996.17 | Refinanced | 4394.17 |
| | | | | | | |
| | | | | | | |

**PARTY TO CIVIL SUIT** (Include all civil lawsuits you have ever been a party to..)

**Section C**

| I/J S/D | Name of Plaintiff in the case | Court of Jurisdiction and County | Case Number) | Date of Suit Filed | Date of Judgment | Judgment Amount/ Unpaid Balance |
|---|---|---|---|---|---|---|
| I/J | See Attachment Liabilities Section C | | | | | |

**BANKRUPTCY FILINGS:** (Include information requested for any Chapter 7,11,or 13 bankruptcy filings you have ever been a party to as an individual or as a business entity.)

**Section D**

| I/J S/D | Type of Bankruptcy (Voluntary or Involuntary) / Name and Address of Trustee | Bankruptcy Case Number | Bankruptcy Court of Jurisdiction | County and State of Discharge | Date Filed | Date of Discharge |
|---|---|---|---|---|---|---|
| I/J | None | | | | | |

Signature: _Emmerd_   Date: _6/10/02_

Attachment : Liabilities Section C " Party to Civil Suit

## Section C

| I/J S/D | Name of Plaintiff In the Case | Court of Jurisdiction and County | Case Number | Date of Suit Filed | Date of Judgment | Judgment Amount/Unpaid Balance |
|---|---|---|---|---|---|---|
| J | GAZABO, SA and Terry Graves | U.S. District Court, Western District of Tennessee | 01-2579 G.A. | 7/23/01 | n/a | Settlement under negotiation |
| I | Cordius Trust | U.S. District Court Southern District of NY (DLC) | 99/CV 3200 (DLC) | 4/29/99 | 2/7/00 | $1,418,000 / $1,418,000 |
| I | Albert Schweizer Institute | U.S. District Court, District of Connecticut | 3-97 CV 1308 | 7/1/97 | 2/9/99 | $1,500,000 / $1,500,000 |
| J | Circles International | Civil Court of New York, County of New York | 1115128 | 12/1998 | 8/1999 | $10,210 / 0 (paid) |
| J | Proskauer, Rose et al. | Civil Court of New York, County of New York | 97/36500 | 11/97 | 3/13/98 | $7708 / 0 (paid) |
| J | Hofman Concerts, Inc. | Civil Court of New York, County of New York | 1054195 | ? | 1/1998 | $750,210 / $600,210 |
| J | Mark Zeiger | Superior Court of NJ, Essex County | L-12934-93 | 9/16/93 | 6/20/94 | $25,925 / paid $3600 in settlement of Judgment |
| J | Micalyn S. Harris, Esq. | Superior Court of NJ, Bergen County | L-5563-93 | 7/30/93 | Settled | $25,000 |
| J | Arthur Zysk | Civil Court of the City of New York, County of NY | 2083193 | 6/1993 | Case dismissed, 11/29/94 | n/a |
| I | Solovay Marshall & Edlin P.C. | Supreme Court of the State of New York, County of NY | 108457/97 | 5/9/97 | 10/31/97 | Paid $35,000 in settlement |
| J | Blue Arrow Services, Inc./Manpower, Inc. | Supreme Court of the State of New York, County of New York | 116219/95; 1401736 | 9/1995 | 4/19/01 | $147,270 / 0 (paid) |
| J | 40 Central Park South, Inc. | Civil Court of the City of New York, Housing Part, County of NY | LT-66704/95 | 1995 | 1/17/96 | $110,040 / 0 (paid) |

Zelle 6/10/02

PROB 48B
(5-00)

| Last Name | First Name | Middle Name | Social Security Number |
|---|---|---|---|
| Kummerfeld | Elizabeth | Miller | 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 |

## Instructions for Completing Monthly Cash Flow Statement

Having been convicted in the United States District Court, you are required to prepare and file with the probation officer a statement fully describing your financial resources, including a complete listing of all monthly cash inflows and outflows.

If you are placed on probation or supervised release (or other types of supervision), you may be periodically required to provide updated information fully describing your financial resources and those of your spouse, significant others, or dependents, as described above, to keep a probation officer informed concerning compliance with any condition of supervision, including the payment of any criminal monetary penalties imposed by the court (see 18 U.S.C. § 3603).

Amendments were made to 18 U.S.C. §§ 3663(a)(1)(B)(i), 3664(d)(3), and 3664(f)(2), and Rule 32(b)(4)(F) to clarify that the assets owned, jointly owned, or controlled by a defendant; liabilities, and the financial needs and earning ability of a defendant and a defendant's dependents are all relevant to the court's decision regarding a defendant's ability to pay. Your Cash Flow Statement should include assets or debts that are yours alone (I-Individual), assets or debts that are jointly (J-Joint) held by you and a spouse or significant other, assets or debts that are held by a spouse or significant other (S-Spouse or Significant Other) that you enjoy the benefits of or make occasional contributions toward, and assets or debts that are held by a dependent (D-Dependent) living in your home that you enjoy the benefits of or make occasional contributions toward.

Please complete the Monthly Cash Flow Statement in its entirety. You must answer "None" to any item that is not applicable to your financial condition. Attach additional pages if you need more space for any item. All entries must be accompanied by supporting documentation (see Request for Cash Flow Statement Financial Records, Prob. 48C). Initial and date each page (including any attached pages) and sign and date the last page of the Cash Flow Statement.

PROB 48B
(9/00)

| Last Name -   Kummerfeld | | |
|---|---|---|
| **MONTHLY CASH FLOW STATEMENT** | | |
| **Monthly Cash Inflows** | | |
| Defendant | | |
| | **Gross** | **Net** |
| Your Salary/Wages (List both monthly gross earnings and take-home pay after payroll deductions.) | | |
| Your Cash Advances (List all payroll advances or other advances from work.) | | |
| Your Cash Bonuses (List all payments from work in addition to your salary that are not an advance.) | | |
| Commissions (List all non-employee earnings as an independent contractor.) | | |
| Business Income (List both monthly gross income and net income after deducting expenses.) | | |
| Interest (List all interest earned each month.) | | |
| Dividends (List all dividends earned each month.) | | |
| Rental Income (List all monthly income received from real estate properties owned.) | | |
| Trust Income (List all trust income earned each month.) | | |
| Alimony/Child Support (List all alimony or child support payments received each month.) | | |
| Social Security (List all payments received from Social Security.) | | |
| Other Government Benefits (List all amounts received from the government not yet reported (e.g., Aid to Families with Dependent Children.) | 1,303.00 | 1,303.00 |
| Pensions/Annuities (List all funds received from pensions and annuities each month.) | | |
| Allowances-Housing/Auto/Travel (List all funds received from housing allowances, auto allowances, travel allowances, and any other kind of allowance.) | 417.00 | 417.00 |
| Gratuities/Tips (List all gratuities and tips received each month from any and all sources.) | | |
| Spouse/Significant Other Salary/Wages (List all gross and net monthly salary and wages received by your spouse or significant other.) | * | * |
| Other Joint Spousal Income (List any monthly income jointly earned with your spouse or significant other [e.g., any income from spouse or income from a business owned or operated by the spouse that you have a joint ownership interest in or control]). | * 20,000.00 | * 14,000.00 |
| Income of Others In-House (List all monthly income of others living in the household or the monthly amount actually paid for household bills by these persons.) | | |
| Gifts from Family (List all amounts received as gifts from family members each month.) | | |
| Gifts from Others (List all gifts received from any sources not yet reported.) | | |
| Loans from Your Business (List all loan amounts received each month from all businesses owned or controlled by you.) | | |
| Mortgage Loans (List all amounts received each month from mortgage loans owed to you.) | | |
| Other Loans (List all other loan amounts received each month not yet reported.) | | |
| Other (specify) (List all other amounts received each month not yet reported.) | | |
| **TOTALS** | 21,720.00 | 15,720.00 |

Initials _E.u.c_  Date _6/10/02_

*This amount varies greatly from month to month, and the number presented represents the high end of that variation.

PROB 48B
(9/00)

Page 5 of __3__

Last Name - Kummerfeld

# Necessary Monthly Cash Outflows

| | | Amount |
|---|---|---|
| Rent or Mortgage (List monthly rental payment or mortgage payment.) | | |
| Groceries (List the total monthly amount paid for groceries and number of people in your household.) # | $ | 8,794.00 |
| Utilities (List the monthly amount paid for electric, heating oil/gas, water/sewer, telephone, and basic cable.) | | 300.00 |
|     Electric | | |
|     Heating Oil/Gas | | 45.00 |
|     Water/Sewer | | |
|     Telephone | | |
|     Basic Cable (no premium channels) | | 25.00 |
| Transportation (List monthly amount paid for gasoline, motor oil, necessary auto repairs, or the cost of public transportation.) | | 61.00 |
| Insurance (List the monthly amount paid for auto, health, homeowner/rental, and life insurance.) | | 1,100.00 |
|     Auto | | |
|     Health | | 241.00 |
|     Homeowner/Rental | | 110.00 |
|     Life | | 142.00 |
| Clothing (List the monthly amount actually paid for clothing.) | | 33.00 |
| Loan Payments (List all monthly amounts paid toward verified loans, other than loans to family members, which are non-allowable expenses.) | | 100.00 |
| Credit Card Payments (List all monthly credit card or charge card payments.) | | 2,500.00 |
| Medical (List all monthly payments for necessary medical care or treatment.) | | 2,500.00 |
| Alimony/Child Support (List all alimony or child support payments made each month.) | | |
| Co-payments (List the total monthly payments made for electronic monitoring and drug and mental health treatment.) | | |
| Other (specify) (List all other necessary monthly amounts paid each month not yet reported.) Legal fees | | 1,600.00 |
| Other Factors That May Affect Monthly Cash Flow (Describe) | | |
| | | |
| TOTAL | | 17,441.00 |

NET MONTHLY CASH FLOW: __-1,721.00__ (CASH INFLOWS LESS NECESSARY CASH OUTFLOWS)

MONTHLY CRIMINAL MONETARY PENALTY PAYMENT: $ _____

PROSPECT OF INCREASE IN CASH INFLOWS (Give a general statement of the prospective increase of the value of any cash inflows reported.)

Signature _____    Date 6/10/02

# EXHIBIT 7

United States District Court
Southern District of New York



PLAINTIFF'S
EXHIBIT
7
10/15/01
DX

United States of America,

       -against-

Carolyn A. Mintus, Shmuel
Rabinowitz, Peter Bucher, Mark A.
Cappozzi, and Elizabeth Miller
Kummerfeld,

                Defendants.

00 CR. 49 (KMW)

Declaration of Gerald E. Ross in Support
of Application of Defendant Elizabeth
Miller Kummerfeld to Modify Travel
Restrictions

STATE OF NEW      SS.:   YORK }
COUNTY OF NEW          YORK }

Gerald E. Ross deposes and says:

1.  I am the attorney for Elizabeth Miller Kummerfeld, a defendant in the above captioned matter. I make this declaration pursuant to Title 18, U.S.C. §3142 in support of her application for amendment of the conditions of her bail to permit her to travel abroad for a few days at the end of this month. Mrs. Kummerfeld wishes to travel to London and Paris from October 25 through November 3, 2000 to participate in an important meeting of the American Academy of Achievement being held in London, and to meet with persons in France with respect to planning the 2001 meeting of the Academy of Achievement. If permitted to go, she will also have an opportunity to see her daughter and grandson.

**The Charges Against Kummerfeld**

2.  Mrs. Kummerfeld has no prior criminal record. She now stands charged under Title 18 U.S.C. §1343 with conspiracy to commit wire fraud because she is claimed to have introduced a potential investor to the principal defendant in this case, Ms. Carolyn Mintus. The allegations of the indictment, if assumed to be true, show that her participation in the

alleged conspiracy to commit wire fraud is probably unknowing and certainly minimal.

3.  The indictment alleges that a total of seven unidentified "investors" were solicited by various defendants to place funds with defendant Mintus to invest in allegedly fraudulent high yield investment opportunities. Six of the seven investors are alleged to have placed hundreds of thousands and even millions of dollars with Ms. Mintus. Kummerfeld is charged with soliciting Investor # 6, but there is no allegation that she did anything other than describe Mintus' investment "program" to investor #6 or that he or she actually placed any funds with Mintus or that he or she even contacted Mintus. There is no allegation that Mrs. Kummerfeld had any knowledge or even suspicion that the Mintus investment program was fraudulent.

4.  Although Kummerfeld is said to have conspired with Mintus to perpetrate the alleged fraud, the only overt acts alleged against her are the apparently unconsummated "solicitation" of Investor #6 and the receipt by Kummerfeld Associates, Inc., a corporation of which she is president, of three payments of money. Those payments are not alleged to be connected to any of the acts alleged in the indictment. There is no allegation that the payments are improper or intended as a reward for criminal behavior. There is no claim that Kummerfeld knew the source of the payments allegedly made to Kummerfeld Associates, Inc. It is not even alleged that Kummerfeld benefitted personally from the payments to Kummerfeld Associates, Inc.

5.  Moreover, Kummerfeld is not associated in any way with any of the money laundering charges in the indictment. Mrs. Kummerfeld maintains that she is innocent of any crime.

**The Government has not Proved that Kummerfeld Presents a Risk of Flight**

6.  Mrs. Kummerfeld is clearly entitled to pre-trial release. The Court is required by statute to set the "least restrictive" conditions that it

2

determines will "reasonably assure the appearance of the person as required." (18 U.S.C. §3142(c)(2)). The only basis for confiscating Mrs. Kummerfeld's passport and restricting her freedom to travel is that the Court made a finding of fact that an unrestricted pre-trial release under 18 U.S.C. §3142(b) "will not reasonably assure the appearance of the person as required ...." (18 U.S.C. §3142(c)). With respect, for the reasons set forth herein, I submit that the Court should reverse its prior conclusion and permit Mrs. Kummerfeld to travel abroad.

7.  The Court has been informed by prior counsel that Mrs. Kummerfeld has been a resident of New York City for almost thirty years. She and her husband, Donald David Kummerfeld reside at 106 Central Park South, in New York City, and have been active in the life of the City for many years. They have been in business together as principals of Kummerfeld Associates, Inc. for 15 years, and currently have a substantial office at 70 East 55th Street. Kummerfeld Associates, Inc. is a venture capital firm, Mrs. Kummerfeld is the president of the corporation and her husband is chairman. The corporation has two full-time employees and a number of consultants who are employed with respect to specific transactions the firm is involved in. Annexed as Exhibit A hereto is a draft brochure which describes the corporation's business and the credentials of its principals.

8.  Mrs. Kummerfeld is active in several charitable and civic organizations. She was a founder of The American Foundation for AIDS Research and served as a trustee of that organization for six years. She is active in the Monterey Institute Center for Non-Proliferation Studies and the Foundation for the Support of the United Nations.

9.  In addition to their New York City apartment, which they rent, the Kummerfelds own a home on Cape Cod in Brewster Mass, which they have owned for 30 years. This house was recently appraised as having a reasonable market value of $1.7 million. The house has a mortgage lien with an outstanding balance of approximately $110,000. Attached as Exhibit B hereto are: (1) a copy of the appraisal, (2) a title report showing that the house is owned by Elizabeth and Donald Kummerfeld, and (3) a

3

form 1098 from Security Federal Savings Bank in Brockton Massachusetts showing a mortgage balance of $113,090.47 as of the end of 1999.

10. Mrs. Kummerfeld's daughter, Theodosia Whitney Kummerfeld, lives in Paris with her husband, John D. Brinitzer, Esq. and their 2 year old son Alexander. I understand that the Court cited this fact as a reason why Mrs. Kummerfeld might not return to this jurisdiction for trial. However, the Brinitzer/Kummerfelds are not permanent residents of Paris. Both Ms. Theodosia Kummerfeld and her husband are attorneys admitted to practice in New York. Mr. Brinitzer is a partner of Cleary, Gottlieb, Steen & Hamilton and was recently assigned to the firm's Paris office. Both he and his wife travel to the United States frequently and his assignment in Paris is part of the firm's normal rotation of partners to its Paris office. The mere circumstance that Mrs. Kummerfeld's daughter and son-in-law are temporarily residing in Paris is not sufficient proof that Mrs. Kummerfeld will not appear for trial when required to do so in this case.

11. Mrs. Kummerfeld has long standing roots in New York. Her daughter, who is an officer of this Court, is a signatory on Mrs. Kummerfeld's bail bond. Her husband is a co-signer on the bond. The mere pendency of charges is not enough to support a finding of risk of flight. *U.S. v. Friedman*, 837 F.2d 48, 50 (2nd Cir. 1988): "[W]e have required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight." Even without the pledge of the Cape Cod home, there are no facts that indicate that Mrs. Kummerfeld presents a flight risk.

12. Mrs. Kummerfeld has faithfully attended all court appearances, even when not absolutely required to do so. She was in court on Friday October 13, when only the presence of counsel was required. I expect that she will be in Court on Monday October 23 when this motion is argued. I understand that she has attended all previous court conferences. She made no effort to resist or impede her arrest. In sum, she has been a fully cooperative defendant.

4

**Restricting Kummerfeld's Foreign Travel is Overly Restrictive**

13. Mrs. Kummerfeld's business and charitable activities involve frequent
travel abroad and it is an unreasonable hardship to her to restrict her
foreign travel. The purpose of the trip for which she seeks permission in
the present motion is to attend the International Achievement Summit of
the American Academy of Achievement in London, England. That meeting
takes place from October 26 through October 29, 2000. Annexed as Exhibit
C hereto is a letter of invitation from Wayne R. Reynolds, the president of
the American Academy of Achievement together with the program for the
meeting in London.[1] Mrs. Kummerfeld then wishes to go to Paris to meet
with key individuals important for next year's Summit and incidentally to
visit her daughter and grandson. Copies of her airline tickets are annexed
as Exhibit D hereto.[2]

14. Given that Mrs. Kummerfeld has long-standing roots in New York, that
she has a substantial business here, that she and her husband own
property in the United States, and that her daughter has a professional
obligation to ensure her appearance in court when required, it is unduly
restrictive to limit Mrs. Kummerfeld's foreign travel. Although it should
not be necessary, the Kummerfelds are willing to pledge their Cape Cod
home as security for Mrs. Kummerfeld's return for trial.

15. A similar request for permission to travel abroad was made on September
5, 2000. That request was denied. Annexed as Exhibit E hereto are copies

---

[1]    The letter also refers to planning meetings in September. These were the meetings
with respect to which permission to travel to attend them was denied.

[2]    In opposing her prior application for permission to travel to a planning meeting of the
American Academy of Achievement, the Government took exception to the fact that
Mrs. Kummerfeld had purchased her tickets prior to obtaining permission to travel.
There is nothing sinister or presumptuous in purchasing tickets in advance. I was
told by Mrs. Kummerfeld that she purchases the tickets in advance to obtain a less
expensive fare. The tickets can be returned for a refund with a small penalty which is
still cheaper than buying tickets at the last minute. The Kummerfeld's booked tickets
to connecting flights in Montreal because the total fare is considerably less expensive
than flying direct from New York.

of the letter request of Mrs. Kummerfeld's prior attorney and the Government's response.

16. Mrs. Kummerfeld is entitled to a presumption that she is innocent and as a presumptively innocent person is entitled to enjoy her normal activities. There is absolutely no proof that could reasonably be found to indicate that she will not appear for her trial. Accordingly, on her behalf, I respectfully request that her passport be returned to her and that she be permitted to travel to Europe as set forth herein. Alternatively, I request that she be permitted to travel abroad on the condition that she and her husband pledge the Cape Cod property as security for her appearance at trial.

Executed on October 18, 2000

I certify under penalty of perjury that the foregoing is true and correct.

Gerald E. Ross (GR0534)

## Kummerfeld Associates, Inc.:

Kummerfeld Associates, Inc. is a diversified financial and investment banking firm established in 1985. During the past fourteen years, the firm has been engaged in financial and management consulting, mergers and acquisitions and strategic investments in new ventures and in growth oriented companies. These activities represent the core services the firm continues to provide today.

Now in its fourteenth year, Kummerfeld Associates has enlarged its services to client groups by offering structured off balance sheet financial products to large and medium sized companies seeking financing for their expansion programs.

### Financial and Management Consulting:

The firm provides domestic and international clients with a wide range of financial and management advisory services designed to meet their specific needs. Some of the clients are small or medium sized companies with high growth potential requiring strategic business planning, improved management, carefully designed acquisitions or strengthened capital structure. Others are large firms desiring personal contact and service from a high level, experienced manager/investment banker. Consulting services to these clients are provided on a negotiated fee schedule or on a retainer basis.

### Mergers and Acquisitions:

Through its extensive contacts with client companies, Kummerfeld Associates locates investments or acquisition candidates for client investment funds and corporations, and assists in structuring and implementing the transactions. The firm also represents clients who seek to divest their properties, particularly those requiring a high degree of confidentiality in a carefully controlled sale.

### Strategic Investments:

The firm makes strategic investment on its own behalf of client investors in special situations. These investment are focused on new ventures or young companies with unusual growth opportunities where the firm will have a continuing oversight relationship with the company.

### Communications and Entertainment:

While the clients of Kummerfeld Associates include a wide range of businesses and industries, the firm has special expertise and extensive contacts in the communications and entertainment industries. The firm financed the establishment of a leading newspaper syndication company, Creators Syndicate and played a major role in the management buyout of The Chicago Sun Times from its parent company, News America, Inc.. On occasion Kummerfeld Associates provides funding for feature film production and becomes involved in various funding projects in the entertainment industry.

## KEY PERSONNEL:

### Donald David Kummerfeld, Chairman

Prior to establishing Kummerfeld Associates, Mr. Kummerfeld was President and Chief Operating Officer of News America Publishing Inc., a major communications company from 1978 - 1985. During his seven year tenure, he also served as a director of the News Corporation Ltd. and as a member of the finance committee of its board, participating in all major strategic decisions of the group in the United States, Europe and Australia. His corporate experience also includes Vice President of the First Boston Corporation, a New York investment bank from 1971 - 1975. He was a founding partner in 1969 of the Government Research Corporation in Washington, DC which published the weekly magazine, National Journal, which will be celebrating its twentieth year in 1999.

Mr. Kummerfeld's experience in the public sector includes, seven years in the US Bureau of the Budget (Now Office of the Management and Budget) where he served as the special Assistant to the Director of Budget and later as the Chief Budget Examiner of the Department of Housing and Urban Development of which he was one of the key architects for its establishment as an independent government agency. During the first fiscal crisis in 1976 - 78, he served first as the Budget Director of New York City, then as First Deputy Mayor, and finally as Executive Director of the New York State Emergency Financial Control Board.

Mr. Kummerfeld served as Chairman of the Mayor's Management Advisory Task Force, a private group assisting New York City in achieving structural reform, from 1991 to 1993 for which he received the special public service achievement award by Mayor Dinkins. As a Mayoral appointee, Mr. Kummerfeld also served for seventeen years as a director of the Board of the United Nations Development Corporation, which finances all buildings used by the United Nations and its family of organizations located in New York City. Currently he serves as a director of Sequa Corporation, a major diversified aerospace and chemical company listed on the New York Stock Exchange, University Support Services Corporation and International House for which he serves as its Treasurer.

An internationally renowned speaker on mass media, magazine publishing, environment and waste management, Mr. Kummerfeld has addressed many international audiences in Brussels, Amsterdam, Buenos Aires, Tokyo, Moscow, Helsinki, London, Sydney, Frankfurt, Paris Sao Paulo and New Zealand. He is currently President and Chief Executive Officer of the Magazine Publishers of America, a trade association for consumer magazines.

Mr. Kummerfeld is a graduate of Stanford University from which he received a Bachelor of Arts Degree in Philosophy and Master's Degree in Political Theory. He also holds a Master's Degree in Government from Harvard University where he received the Henry Knox Fellowship during his candidacy for Doctor of Philosophy.

**Elizabeth M. Kummerfeld, President**

Ms. Kummerfeld has extensive experience in management consulting, project finance and management and information systems design and implementation. At the United Nations from 1976 - 1982, in the capacity of the Senior Advisor to the Under-Secretary General for Economic and Social Affairs, she directed the establishment of the Development Information System (DEVSIS) and supervised various information systems projects for human settlements, environment and renewable energy sources in Geneva, Paris, Nairobi, and New York. In 1979, at the request of the Executive Director of the African Economic Commission, Ms. Kummerfeld was sent to Addis Ababa where she was engaged in the establishment of the Pan African Development Information System (PADIS). She also was seconded to conduct program evaluations of United Nations organizations such as United Nations University in Tokyo, United Nations Environment Program in Nairobi and UNESCO in Paris. Ms. Kummerfeld often represented the United Nations in various inter-agency as well as international projects.

From 1983 - 1985 she was Vice President and a partner of Dalbar Financial Services where its clients included State Street Bank of Boston, National Economic Research Associates and Times Mirror Corporation.

As a dedicated philanthropist, Ms. Kummerfeld founded American Foundation for AIDS Research with Elizabeth Taylor and Dr. Mathilde Krim. She is also a founder of the Panos Institute, a twelve year old think-tank with offices in London, Paris and Washington DC for which she continues to serve as a director. In 1985 she established Mizuta Foundation in memory of late Mr. Mikio Mizuta, former Finance Minister of Japan and her mentor, to finance seminars and fellowships in order to encourage free exchange of information between governments in their economic and financial policies and practices, and in particular between Japan and the United States. Additionally Ms. Kummerfeld served as a member of the board of directors of New York City Meals-on-Wheels, Alliance for International Business and the Eye Bank for Sight Restoration among many other civic organizations. She is currently a member of the Board of New York Sister City Committee, Center for Non-proliferation Studies of the Monterey Institute, and the Foundation for the Support of the United Nations which honored her with the Boutros Ghali Award in 1995 and 1996. As a major donor and a member of the Advisory Board of the Albert Schweitzer Institute, she received the Albert Schweitzer Award in 1996.

Ms. Kummerfeld is a graduate of Wheaton College from which she received a Bachelor of Arts degree in Journalism and Literature. She also holds a Master of Arts Degree from the University of Minnesota in Information Science and Comparative Literature and from New York University in Creative Arts. While serving as a full time teaching assistant or instructor, Ms. Kummerfeld also continued graduate studies at Harvard University and Wharton School of the University of Pennsylvania. She held teaching assignments at Bethel College, Drexel University, New York University, St. Johns University, City University of New York Graduate School, Tokyo Woman's College and Josai University.

## CLIENTS:

A partial list of clients served by the firm include:

Aderans Corporation
American Honda Motor Company, Inc.
American Hydroculture, Inc.
Bank of Tokyo
The Bowery Savings Bank
Chicago Sun Times, Inc.
Creators Syndicates, Inc.
Dawson Science Corporation
Dentsu, Inc. (Japan)
Dentsu USA, Inc.
Dentsu Eye, Inc. (Japan)
Dynamic Golf Corporation (Japan)
Financial Systems Group
Forest Oaks Country Club
Hong Kong Trade Development Association (Hong Kong)
Hilliard Farber Securities Corporation
Industrial Bank of Japan
International Power & Light, Inc.
Itokin Company, Ltd. (Japan)
Kadokawa Publishing Company (Japan)
Kruger Paper Company (Canada)
Life Group, S.p.A. (Italy)
Meric Industries, Inc.
News Corporation (Australia)
Nikkei Business, Inc. (Japan)
Nisshin Corporation (USA)
Okamoto Industries, Inc. (Japan)
Okamoto Trading Company (Japan)
Parry Corporation Ltd. (Australia)
Pleasant Valley Country Club (PGA Tour Event)
Sanus Corporation Health Systems, Inc.
Seven Keys Productions
Wakefield Nationals Inc.

*Heritage Research, Inc.*
*1600 Falmouth Road*
*Bell Tower Mall*
*Centerville, MA 02632*
*(508) 778-4700*

October 19, 2000

To Whom It May Concern:

I, Laurie P. Snowden-Lebel, President of Heritage Research Inc., a Massachusetts Corporation, hereby state that the Public Records at the Barnstable County Registry of Deeds have been examined. The Barnstable County Registry of Deeds records cover all of Barnstable County, Massachusetts. I have been asked by Attorney Richard Clarey to identify all encumbrances against Elizabeth Kummerfeld in Barnstable County, Massachusetts.

As of October 19, 2000 at 11:27 A.M there are no encumbrances, or liens such as Attachments, Federal Tax Liens and Commonwealth of Massachusetts Tax Liens, filed against Elizabeth Kummerfeld or any property Elizabeth Kummerfeld may own in Barnstable County, Massachusetts.

My research at the Barnstable County Registry of Deeds included examining encumbrances against 19 Muskrat Lane, Brewster, Massachusetts. My research of the Public Records is limited to information on record at the Barnstable Registry of Deeds.

My examination ended at 11:27 A.M today, and was through Instrument No. #0064759. This instrument number is significant when you are examining the Grantee and Grantor records at the Barnstable County Registry of Deeds. This instrument number is easily identifiable.

If you should have any questions or comments, please do not hesitate to contact me directly or call the Barnstable Registry of Deeds Registrar John Meade at 508-362-7733.

Very truly yours,

Laurie P. Snowden-Lebel
President

LPSL/cc
/17590

cc. Richard Clarey, Esquire

• GENEALOGY CHARTS  • GENERAL TITLE WORK  • PARALEGAL SERVICES  • OWNERS UNKNOWN RESEARCH SPECIALTY
FAX (508) 778-2887

FROM : ELAN'T APPRAISAL CO., INC.    PHONE NO. : 15085406556    Oct. 18 2000 02:18PM P3

# UNIFORM RESIDENTIAL APPRAISAL REPORT    File No. MUSKRAT1P

| Valuation Section | | | | Comments on Cost Approach (such as, source of cost estimate, site value, |
|---|---|---|---|---|
| ESTIMATED SITE VALUE | | = $ | 1,575,000 | square foot calculation and for HUD, VA and FmHA, the estimated remaining |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | | | economic life of the property):  EXTRACTION METHOD USED TO |
| Dwelling      1,326 Sq. Ft. @$  125.00   = $ | | | 165,750 | ESTIMATE SITE VALUE DUE TO THE LACK OF RECENT |
| _____ Sq. Ft. @$ _____ = | | | | LAND SALES. COST NEW DERIVED FROM COST MANUALS |
| FP/DECK/BATH _____ Sq. Ft. @$ ____ = | | | 21,500 | AND LOCAL CONTRACTS. 25% DEPRECIATION BASED ON |
| Garage/Carport _____ Sq. Ft. @$ ____ = | | | | 60 YR ECONOMIC LIFE. REMAINING ECONOMIC LIFE IS 45 |
| Total Estimated Cost New ................... = $ | | | 187,250 | YEARS. SEE ATTACHED ADDENDUM FOR G.L.A |
| Less    Physical     Functional     External | | | | CALCULATIONS. GLA IS APPROXIMATE ONLY, WITH |
| Depreciation   46,813 | | = $ | 46,813 | DEVIATIONS OF NO MEASURABLE CONSEQUENCE TO |
| Depreciated Value of Improvements ........... = $ | | | 140,437 | VALUE. |
| "As-is" Value of Site Improvements ............ = $ | | | 10,000 | |
| INDICATED VALUE BY COST APPROACH ......... = $ | | | 1,725,437 | |

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address  BREWSTER | 19 MUSKRAT LANE | 18 STANDISH ROAD BREWSTER | | 130 CHARLES STREET BREWSTER | | 290 FOSTER ROAD BREWSTER | |
| Proximity to Subject | | 2.20 miles | | 2.00 miles | | 1.71 miles | |
| Sales Price | $      REFINANCE | $            1,760,000 | | $           1,850,000 | | $           1,600,000 | |
| Price/Gross Living Area | $            /□ | $   800.92  □ | | $   1826.28  □ | | $   646.20  □ | |
| Data and/or | ON-SITE INSPT | M.L.S./BROKER | | M.L.S./BROKER | | M.L.S./BROKER | |
| Verification Source | | ASSESSOR'S OFFICE | | ASSESSOR'S OFFICE | | ASSESSOR'S OFFICE | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust | DESCRIPTION | +(−)$ Adjust | DESCRIPTION | +(−)$ Adjust |
| Sales or Financing | | NONE | | NONE | | NONE | |
| Concessions | | KNOWN | | KNOWN | | KNOWN | |
| Date of Sale/Time | | 3/31/00 | +102,000 | 6/1/00 | +61,600 | 7/10/00 | +40,000 |
| Location | QUAIL ACRES | PILGRIM PINES | | SUNSET BEACH | −185,000 | PT OF ROCKS | +160,000 |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | .80 ACRE | .62 ACRE | | .69 ACRE | | .48 ACRE | 50,000 |
| View | CAPE COD BAY | CAPE COD BAY | | CAPE COD BAY | | CAPE COD BAY | |
| Design and Appeal | CONTMP/GD | CAPE/GOOD | | CNVNTNL/GD | | CAPE/GOOD | |
| Quality of Construction | AVERAGE | GOOD | −54,625 | AVERAGE | | GOOD | −61,900 |
| Age | 35 EFF 15 | 17 EFF 10 | −25,000 | 98 EFF 15 | | 19 EFF 10 | −25,000 |
| Condition | AVERAGE | GOOD | | AVERAGE | | GOOD | |
| Above Grade | Total : Bdrms : Baths | Total : Bdrms : Baths | | Total : Bdrms : Baths | | Total : Bdrms : Baths | |
| Room Count | 4 :  2 :  2 | 6 :  3 :  3 | −3,000 | 5 :  3 :  1 | −3,000 | 10 :  5 :  2 | |
| Gross Living Area | 1,326 Sq. Ft. | 2,185 Sq. Ft. | −17,180 | 1,013 Sq. Ft. | +6,260 | 2,476 Sq. Ft. | −23,000 |
| Basement & Finished | N/A | 100% BSMT | −5,000 | N/A | | 100% BSMT | −5,000 |
| Rooms Below Grade | N/A | NO FINISH | | N/A | | NO FINISH | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | ELEC/NO AC | ELEC/NO AC | | NO HEAT | +5,000 | OIL/AC | −5,000 |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | NONE | 2 CAR DET | −10,000 | 2 CAR DET | −10,000 | 2 CAR ATT | −10,000 |
| Porch, Patio, Deck, | LG DECK | LG DECK | | OPNPRCH/DK | | DECK/ENCP | −3,500 |
| Fireplace(s), etc. | 1-FIREPLACE | 1-FIREPLACE | | 1-FIREPLACE | | 1-FIREPLACE | |
| Fence, Pool, etc. | NONE | NONE | | NONE | | NONE | |
| Net Adj. (total) | | □ + ☒ − $ | 12,805 | □ + ☒ − $ | 119,140 | ☒ + □ − $ | 116,600 |
| Adjusted Sales Price | | | | | | | |
| of Comparable | | $    1,737,195 | | $    1,730,860 | | $    1,716,600 | |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.):  GLA ADJUSTED AT $20/SF. 10% TIME ADJUSTMENT ANNUALLY DUE TO INCREASING MARKET AND LACK OF INVENTORY. ALL 3 SALES GIVEN EQUAL WEIGHT IN THE ANALYSIS. DUE TO THE LACK OF RECENT AND SUITABLE SALES IN THE NEIGHBORHOOD  IT WAS NECESSARY TO EXPAND THE SEARCH OVER 1 MILE IN RADIUS. SEE ATTACHED FOR ADDITIONAL COMMENTS.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data | NO PRIOR SALE | NO PRIOR SALES | NO PRIOR SALES | NO PRIOR SALES |
| Source, for prior sales | WITHIN 1 YR | WITHIN ONE YEAR | WITHIN ONE YEAR | WITHIN ONE YEAR |
| within year of appraisal | DEED | DEED | DEED | DEED |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:  SUBJECT HAS NOT BEEN LISTED FOR SALE DURING THE PAST 12 MONTHS. COMPARABLE SALES DID NOT SELL WITHIN 12 MONTHS OF RECORDED SALE DATES.

| INDICATED VALUE BY SALES COMPARISON APPROACH | | | | $   1,730,000 |
|---|---|---|---|---|
| INDICATED VALUE BY INCOME APPROACH (If Applicable)   Estimated Market Rent  $ ___ N/A ___ /Mo. x Gross Rent Multiplier  N/A  = $ | | | | |

This appraisal is made  ☒ "as is"  □ subject to the repairs, alterations, inspections or conditions listed below  □ subject to completion per plans & specifications.
NO CONDITIONS TO APPRAISAL. INSUFFICIENT RENTAL DATA TO DETERMINE A RELIABLE GROSS RENT

**Final Reconciliation:** SALES COMPARISON ANALYSIS IS THE BEST INDICATOR OF VALUE AND IS SUPPORTED HERE BY THE COST APPROACH. THE LAND VALUE ESTIMATE IN THE COST APPROACH CONTRIBUTES 91% OF VALUE DUE TO THE LACK OF AVAILABLE WATERFRONT SITES AND IS TYPICAL FOR THE AREA.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA form 1004B (Revised _____6/93_____).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF _____OCTOBER 5, 2000_____ (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE                $    1,730,000

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) | |
|---|---|---|
| Signature Patricia A. Montgomery | Signature Joseph P. Clancy | ☐ Did  ☒ Did Not |
| Name PATRICIA A. MONTGOMERY | Name JOSEPH M. CLANCY, ASA | Inspect Property |
| Date Report Signed OCTOBER 13, 2000 | Date Report Signed OCTOBER 13, 2000 | |
| State Certification # | State | State Certification # MA, CERT. GEN. APPR. #76 | State MA |
| Or State License # | State | Or State License # | State |

Freddie Mac Form 70 6/93                                    PAGE 2 OF 2                                    Fannie Mae Form 1004 6-93

Form UA2 — "TOTAL 2000 for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

SECURITY FEDERAL SAVINGS BANK          04-1818860
10 LEGION PARKWAY   PO BOX 4500
BROCKTON MA          02303-4500

**FOR CALENDAR YEAR 1999**

The information in BOX 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report the refund of interest on your return.

* Caution * This amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.

ADDRESS SERVICE REQUESTED

**TAXPAYER I.D. NUMBER ON FILE**

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

Please make sure that the TAXPAYER I.D. NUMBER ON FILE shown is correct for these accounts, since there are penalties for incorrect numbers.

If you see the letter C at the end of your account number, your account has been closed.

**FOR QUESTIONS CALL:**

508-586-4494

'ER'S/BORROWER'S Name, Street Address, City, State & ZIP Code

DONALD D. KUMMERFELD AND
ELIZABETH M. KUMMERFELD
106 CENTRAL PARK SOUTH
NEW YORK CITY, NY 10019-1663

| ACCOUNT NUMBER | INTEREST RECEIVED | POINTS PAID | OVERPAID INTEREST |
|---|---|---|---|
| 01-14-0000018631 | 7,979.14 | 0.00 | 0.00 |

| BOX 1 - MORTGAGE INTEREST RECEIVED FROM PAYER(S)/BORROWER(S) | BOX 2 - POINTS PAID ON PURCHASE OF PRINCIPAL RESIDENCE (SEE BOX 2 ON BACK) | BOX 3 - REFUND OF OVERPAID INTEREST (SEE BOX 3 ON BACK) | SEE PAGE BELOW FOR YOUR LOAN ANNUAL STATEMENT |
|---|---|---|---|
| 7,979.14 | | | |

## LOAN ANNUAL STATEMENT FOR CALENDAR YEAR 1999
### IMPORTANT TAX DOCUMENT (1098) ENCLOSED

04-1818860
SECURITY FEDERAL SAVINGS BANK

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

| ACCOUNT NUMBER | PRINCIPAL BALANCE | ESCROW BALANCE | YTD INTEREST PAID | YTD TAXES PAID | LATE CHARGE |
|---|---|---|---|---|---|
| 01-14-0000018631 | 113,090.47 | 0.00 | 7,979.14 | 0.00 | 0.00 |

          113,090.47                    7,979.14

# EXHIBIT 8

# UNIFORM RESIDENTIAL APPRAISAL REPORT   File No.   15mlbr

**Property Description**

| | | | |
|---|---|---|---|
| Property Address | 19 Muskrat Lane | City Brewster | State MA   Zip Code 02631-1589 |
| Legal Description | Deed Book 1493, Page 809, 12/14/1970 | | County Barnstable |
| Assessor's Parcel No. | Assessors Map 9, Lot 3 | Tax Year 2004   R E Taxes $ 5,052.00 | Special Assessments $ 0.00 |
| Borrower Donald & Elizabeth Kummerfeld | Current Owner Same as Borrower | | Occupant ☒ Owner   ☐ Tenant   ☐ Vacant |
| Property rights appraised ☒ Fee Simple   ☐ Leasehold | Project Type ☐ PUD | ☐ Condominium (HUD/VA only) | HOA $   /Mo. |
| Neighborhood or Project Name | East Brewster Section | Map Reference 8-A-30 Arrow | Census Tract 0109.00 |
| Sale Price $   Refinance | Date of Sale N/A | Description and $ amount of loan charges/concessions to be paid by seller   None Disclosed | |
| Lender/Client Town & Country Credit | Address Braintree, MA 02184 | | |
| Appraiser Thomas P Podzikowski | Address Bristol Appraisal Service, Seekonk, MA  02771 | | |

**NEIGHBORHOOD**

| | | | |
|---|---|---|---|
| Location | ☐ Urban   ☒ Suburban   ☐ Rural | Predominant occupancy | Single family housing |
| Built up | ☐ Over 75%   ☒ 25-75%   ☐ Under 25% | | |
| Growth rate | ☐ Rapid   ☒ Stable   ☐ Slow | ☒ Owner | |
| Property values | ☒ Increasing   ☐ Stable   ☐ Declining | ☐ Tenant | |
| Demand/supply | ☒ Shortage   ☐ In balance   ☐ Over supply | ☒ Vacant (0-5%) | |
| Marketing time | ☒ Under 3 mos.   ☐ 3-6 mos.   ☐ Over 6 mos. | ☐ Vac (over 5%) | |

| PRICE $(000) | AGE (yrs) | Present land use % | Land use change |
|---|---|---|---|
| 250   Low  New | | One family   70 | ☒ Not likely   ☐ Likely |
| 2,500   High  150 | | 2-4 family | ☐ In process |
| 500   Predominant   50 | | Multi family | To: |
| | | Commercial   5 | |
| | | (Vacant)   25 | |

Note:  Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics:  Bounded to the North by Cape Cod Bay, to the South by Route 6A, to the East by Route 6 and to the West by Cape Cod Bay

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.):  The subject is located in the East Brewster Section of Brewster, MA.  The area is comprised mainly of single family homes of a variety of styles and ages with a small mix of commercial use (Nickerson State Park).  The properties are maintained in good or average condition.  All amenities are accessible via Routes 6 & 6A.  Marketability is currently good in the area

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):  At present, demand exceeds supply for homes in the area, interest rates are relatively low which appears to be leading to a minimal marketing time in most areas, offers exceeding the list price are common.  The average marketing time in the neighborhood is 10-90 days.  The subject is not currently listed for sale, has not been listed within the past 12 months, and last transferred in 12/19/1970.

**PUD**

Project Information for PUDs (if applicable) -- Is the developer/builder in control of the Home Owners' Association (HOA)?   ☐ Yes   ☒ No
Approximate total number of units in the subject project   N/A   Approximate total number of units for sale in the subject project   N/A
Describe common elements and recreational facilities:  The subject is not a PUD

**SITE**

| | | |
|---|---|---|
| Dimensions  Deed Unavailable | | Topography   Sloping to water |
| Site area  35,098 +- Square Feet / .81 Acres   Corner Lot ☐ Yes ☒ No | | Size   Average for area |
| Specific zoning classification and description   RM / 60000 SF + 150' Frontage | | Shape   Irregular |
| Zoning compliance ☐ Legal   ☒ Legal nonconforming (Grandfathered use) ☐ Illegal   ☐ No zoning | | Drainage   Appears Adequate |
| Highest & best use as improved:  ☒ Present use   ☐ Other use (explain) | | View   Cape Cod Bay |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | Asphalt | ☒ | ☐ | Landscaping   Typical of area |
| Gas | ☐ None | | Curb/gutter | None | ☐ | ☐ | Driveway Surface   Grass & Shells |
| Water | ☒ | | Sidewalk | None | ☐ | ☐ | Apparent easements None Apparent |
| Sanitary sewer | ☐ Private | | Street lights | None | ☐ | ☐ | FEMA Special Flood Hazard Area   ☐ Yes ☒ No |
| Storm sewer | ☐ None | | Alley | None | ☐ | ☐ | FEMA Zone  C   Map Date  6/4/1987 |
| | | | | | | | FEMA Map No.  2500030009E |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.):   No adverse easements or encroachments were noted.  Large yard area for outdoor activities.  Parking in the driveway for 3 + cars  Typical landscaping  A portion of the subject site MAY BE located in Flood Zone A-4, it appears as though the improvements are in Flood Zone C

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units   1 | Foundation   Concrete | Slab   FULL | Area Sq. Ft.   0 | Roof ☐ |
| No. of Stories   1 | Exterior Walls   Wood | Crawl Space   None | % Finished   N/A | Ceiling ☐ |
| Type (Det./Att.)   Detached | Roof Surface   Asphalt | Basement   None | Ceiling   N/A | Walls   Typ ☒ |
| Design (Style)   Ranch | Gutters & Dwnspts.   None | Sump Pump   None | Walls   N/A | Floor   Typ ☒ |
| Existing/Proposed   Existing | Window Type   Dbl/Hung | Dampness   None | Floor   N/A | None ☐ |
| Age (Yrs.)   39 years | Storm/Screens   Yes / Yes | Settlement   None | Outside Entry N/A | Unknown ☐ |
| Effective Age (Yrs.)   8-12 years | Manufactured House   No | Infestation   None | | Adequate ☐ |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | Slab |
| Level 1 | | 1 | DA | 1 | | | | 2 | 2 | | | 1,342 |
| Level 2 | | | | | | | | | | | | |

Finished area above grade contains:   4 Rooms;   2 Bedroom(s);   2 Bath(s);   1,342 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Vinyl/Average | Type | BBoard | Refrigerator | ☒ | None | ☐ | Fireplace(s) # 1-Brick ☒ | | None | ☒ |
| Walls | Plaster/ Good | Fuel | Electric | Range/Oven | ☒ | Stairs | ☐ | Patio | | Garage | # of cars |
| Trim/Finish | Wood/Good | Condition | Average | Disposal | ☒ | Drop Stair | ☐ | Deck  Wood | ☒ | Attached | |
| Bath Floor | Vinyl / Average | COOLING | | Dishwasher | ☒ | Scuttle | ☒ | Porch  Covered | ☒ | Detached | |
| Bath Wainscot | Plaster / Good | Central | None | Fan/Hood | ☒ | Floor | ☐ | Fence | | Built-In | |
| Doors | Solid Core / Good | Other | None | Microwave | ☐ | Heated | ☐ | Pool | | Carport | |
| | | Condition | N/A | Washer/Dryer | ☐ | Finished | ☐ | | | Driveway | |

Additional features (special energy efficient items, etc.)   Wood-deck area, covered porch, fireplace  The subject site is located directly on Cape Cod Bay with a large beach area

**COMMENTS**

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.   The subject roof is approximately eight years old.  The interior has been updated with cosmetics over time.  The home is in overall good condition with good maintenance & upkeep

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property   None Noted

Form UA2 -- "TOTAL for Windows" appraisal software by a la mode, inc. -- 1 800 ALAMODE

UNIFORM RESIDENTIAL APPRAISAL REPORT    File No.   19mlbr

## COST APPROACH

| Valuation Section | | |
|---|---|---|
| ESTIMATED SITE VALUE | = $ | 1,000,000 |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | |
| Dwelling    1,342 Sq.Ft. @ $    150.00    = $ | | 201,300 |
| 0 Sq.Ft. @ $ | | |
| Deck/Porch/Fireplace    = $ | | 50,000 |
| Garage/Carport    Sq.Ft. @ $    = $ | | |
| Total Estimated Cost New    = $ | | 251,300 |
| Less    Physical    Functional    External | | |
| Depreciation    35,911    = $ | | 35,911 |
| Depreciated Value of Improvements    = $ | | 215,389 |
| "As-is" Value of Site Improvements    = $ | | 10,000 |
| INDICATED VALUE BY COST APPROACH    Rounded    = $ | | 1,225,389 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculations and for HUD, VA and FmHA, the estimated remaining economic life of the property):  THERE WERE NO FUNCTIONAL OR EXTERNAL INADEQUACIES NOTED / OBSERVED. THE ESTIMATED REMAINING ECONOMIC LIFE IS 58-62 YEARS WHICH IS BASED UPON A 70 YEAR TOTAL LIFE. THE COST APPROACH WAS DETERMINED BY USE OF THE MARSHALL & SWIFT VALUATION MANUAL

## SALES COMPARISON ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 19 Muskrat Lane    Brewster, MA | 199 Namequoit Road    Orleans, MA | | 24 Priides Path    Orleans, MA | | 21 Little Bay Road    Orleans, MA | |
| Proximity to Subject | | 4.16 miles | | 4.23 miles | | 4.12 miles | |
| Sales Price | $    Refinance | $    2,275,000 | | $    2,224,000 | | $    2,315,000 | |
| Price/Gross Living Area | $    N/A ⌀ | $    1143.22 ⌀ | | $    752.37 ⌀ | | $    711.87 ⌀ | |
| Data and/or | Inspection | Public Records / MLS | | Public Record / MLS | | Public Record / MLS | |
| Verification Source | Town Hall | Banker & Tradesman | | Banker & Tradesman | | Banker & Tradesman | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-)$ Adjust. | DESCRIPTION | + (-)$ Adjust. | DESCRIPTION | + (-)$ Adjust. |
| Sales or Financing Concessions | | None    Noted | | None    Noted | | None    Noted | |
| Date of Sale/Time | | 11/6/2003 | | 1/22/2004 | | 10/14/2003 | |
| Location | Waterfront | Waterfront | | Waterfront | | Waterfront | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | .81 Acres | 1.72 Acres | -9,100 | 1.17 Acres | -3,600 | 0.92 Acres | |
| View | Waterview | Waterview | | Waterview | | Waterview | |
| Design and Appeal | Ranch / Average | Ranch / Average | | Cape / Average | | Cape / Average | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Age | 39 years | 64 years | | 19 years | | 24 years | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total : Bdrms : Baths | Total : Bdrms : Baths | | Total : Bdrms : Baths | | Total : Bdrms : Baths | |
| Room Count | 4 : 2 : 2 | 8 : 4 : 3 | -5,000 | 10 : 3 : 3.5 | -7,500 | 9 : 6 : 4.5 | -12,500 |
| Gross Living Area | 1,342 Sq.ft. | 1,990 Sq.ft. | -12,960 | 2,956 Sq.ft. | -32,280 | 3,252 Sq.ft. | -38,200 |
| Basement & Finished | Slab | Full Bsmt | | Full Bsmt | | Full Bsmt | |
| Rooms Below Grade | None | Unfinished | -20,000 | Unfinished | -20,000 | Unfinished | -20,000 |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | Typ / None | Typ / None | | Typ / None | | Typ / None | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | None | 2-Integral | -5,000 | 2-Attached | -10,000 | 2-Attached | -10,000 |
| Porch, Patio, Deck, | Deck/Porch | Deck/Porch | | Deck/Porch | | Deck/Porch | |
| Fireplace(s), etc. | 1-Fireplace | 1-Fireplace | | 1-Fireplace | | 1-Fireplace | |
| Fence, Pool, etc. | None | None | | None | | None | |
| | None | None | | None | | None | |
| Net Adj. (total) | | ☐ + ☒ - $ | 52,060 | ☐ + ☒ - $ | 73,380 | ☐ + ☒ - $ | 80,700 |
| Adjusted Sales Price of Comparable | | Net 2.3% Gross 2.3% $ | 2,222,940 | Net 3.3% Gross 3.3% $ | 2,150,620 | Net 3.5% Gross 3.5% $ | 2,234,300 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.):  No time adjustment was warranted.  Site size adjusted at $10,000 an acre, GLA adjusted at $20.00 per S/F, basement area at $20,000, garage stalls at $5,000 for each, bathrooms $5,000 for each full bath.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | No sale in past 3 years.    Town Hall | No sale in the past year. | No sale in the past year. | No sale in the past year.    Town Hall |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal.
None Noted

## RECONCILIATION

| | | |
|---|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH | $ | 1,850,000 |
| INDICATED VALUE BY INCOME APPROACH (if Applicable)    Estimated Market Rent    $    N/A    /Mo. x Gross Rent Multiplier    N/A    = $ | | N/A |

This appraisal is made ☒ "as is"    ☐ subject to the repairs, alterations, inspections or conditions listed below    ☐ subject to completion per plans & specifications.
Conditions of Appraisal:  This appraisal is made "AS IS", no repairs required.  The subject is in good marketable condition.  The final value estimate is based on a one to three month marketing time.
Final Reconciliation:  Most emphasis has been placed on the SALES COMPARISON APPROACH to value, it best reflects the actions of buyers and sellers in this marketplace. THE COST APPROACH supports the final value estimate. THE INCOME APPROACH is not applicable, rents received, typically do not support single family homes as investment properties in this marketplace.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA Form 1004B (Revised    6/93    ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF    March 10, 2004
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $    1,850,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): | |
|---|---|---|
| Signature | Signature | ☐ Did ☐ Did Not |
| Name  Thomas P. Poderowski | Name | Inspect Property |
| Date Report Signed  March 17, 2004 | Date Report Signed | |
| State Certification #  3010 CR | State Certification # | State |
| Or State License # | Or State License # | State |

| Freddie Mac Form 70  6/93 | PAGE 2 OF 2 | Fannie Mae Form 1004 6/93 |
|---|---|---|

Form UA2 — "TOTAL for Windows" appraisal software by a la mode, inc — 1 800-ALAMODE

## Subject Photo Page

| Borrower/Client | Donald & Elizabeth Kummerfeld | | | | |
|---|---|---|---|---|---|
| Property Address | 19 Muskrat Lane | | | | |
| City Brewster | | County Barnstable | State MA | | Zip Code 02631-1589 |
| Lender Town & Country Credit | | | | | |



### Subject Front

19 Muskrat Lane

| | |
|---|---|
| Sales Price | Refinance |
| Gross Living Area | 1,342 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | Waterfront |
| View | Waterview |
| Site | .81 Acres |
| Quality | Average |
| Age | 39 years |



### Subject Rear



### Subject Street

## Comparable Photo Page

| | | | | |
|---|---|---|---|---|
| Borrower/Client | Donald & Elizabeth Kummerfeld | | | |
| Property Address | 19 Muskrat Lane | | | |
| City Brewster | County Barnstable | State MA | Zip Code 02631-1589 | |
| Lender | Town & Country Credit | | | |



### Comparable 1

| | |
|---|---|
| 199 Namequoit Road | |
| Prox. to Subject | 4.16 miles |
| Sale Price | 2,275,000 |
| Gross Living Area | 1,990 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Waterfront |
| View | Waterview |
| Site | 1.72 Acres |
| Quality | Average |
| Age | 64 years |



### Comparable 2

| | |
|---|---|
| 24 Prides Path | |
| Prox. to Subject | 4.23 miles |
| Sale Price | 2,224,000 |
| Gross Living Area | 2,956 |
| Total Rooms | 10 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.5 |
| Location | Waterfront |
| View | Waterview |
| Site | 1.17 Acres |
| Quality | Average |
| Age | 19 years |



### Comparable 3

| | |
|---|---|
| 21 Little Bay Road | |
| Prox. to Subject | 4.12 miles |
| Sale Price | 2,315,000 |
| Gross Living Area | 3,252 |
| Total Rooms | 9 |
| Total Bedrooms | 6 |
| Total Bathrooms | 4.5 |
| Location | Waterfront |
| View | Waterview |
| Site | 0.92 Acres |
| Quality | Average |
| Age | 24 years |

PHOTOGRAPH ADDENDUM

| Borrower/Client | Donald & Elizabeth Kummerfeld | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 19 Muskrat Lane | | | | | |
| City | Brewster | County | Barnstable | State | MA | Zip Code | 02631-1589 |
| Lender | Town & Country Credit | | | | | |



COMPARABLE # 4



COMPARABLE # 5



## PHOTOGRAPH ADDENDUM

| Borrower/Client | Donald & Elizabeth Kummerfeld | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 19 Muskrat Lane | | | | | | |
| City | Brewster | County | Barnstable | State | MA | Zip Code | 02631-1589 |
| Lender | Town & Country Credit | | | | | | |



FRONT VIEW OF CONNECTED
MASTER BEDROOM SUITE



REAR VIEW



COVERED PORCH AREA
CONNECTS THE TWO SIDES OF
THE DWELLING. BEACH & CAPE
COD BAY IN VIEW.

## PHOTOGRAPH ADDENDUM

| Borrower/Client | Donald & Elizabeth Kummerfeld | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 19 Muskrat Lane | | | | | |
| City | Brewster | County Barnstable | | State MA | | Zip Code 02631-1589 |
| Lender | Town & Country Credit | | | | | |



ADDITIONAL REAR VIEW OF THE
MAIN SECTION OF THE DWELLING



BEACH AND CAPE COD BAY
DIRECTLY TO THE FRONT OF THE
DWELLING.



BEACH AREA ON CAPE COD BAY
WITH THE SUBJECT IN DISTANCE
TO THE LEFT.

## PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower/Client | Donald & Elizabeth Kummerfeld |
| Property Address | 19 Muskrat Lane |
| City    Brewster | County  Barnstable     State   MA     Zip Code   02631-1589 |
| Lender    Town & Country Credit | |



MASTER BEDROOM AREA.



MAIN BATHROOM.



KITCHEN & DINING AREA.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Bristol Appraisal Service
Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

APPRAISER'S CERTIFICATION:   The Appraiser certifies and agrees that:

1.  I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation.  If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2.  I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report.  I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3.  I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4.  I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5.  I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6.  I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7.  I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8.  I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9.  I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

SUPERVISORY APPRAISER'S CERTIFICATION:   If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

ADDRESS OF PROPERTY APPRAISED:   19 Muskrat Lane, Brewster, MA 02631-1589

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name:  Thomas P. Podlatowski | Name: |
| Date Signed:   March 12, 2004 | Date Signed: |
| State Certification #:  3968 CR | State Certification #: |
| or State License #: | or State License #: |
| State:  Massachusetts | State: |
| Expiration Date of Certification or License:  10/27/2004 | Expiration Date of Certification or License: |

☐ Did    ☐ Did Not Inspect Property

FROM:
BRISTOL APPRAISAL SERVICE
1087 NEWMAN AVENUE
Seekonk, MA  02771
(508)  399-6615  // FAX (508) 399-6628
E-MAIL ADDRESS: Bristolapp@aol.com

| INVOICE | DATE | REFERENCE |
|---|---|---|
| 19mlbr. | March 10, 200? | |

TO:
Town & Country Credit
Braintree, MA 02184

| DESCRIPTION | AMOUNT |
|---|---|
| Appraisal on:<br>19 Muskrat Lane<br>Brewster, MA 02631<br>Borrower: Donald & Elizabeth Kummerfeld | 400.00 |
| Subtotal | $ 400.00 |
| Late Fee | $ |
| **TOTAL** | $ 400.00 |



## UNIFORM RESIDENTIAL APPRAISAL REPORT
## MARKET DATA ANALYSIS

These recent sales of properties are most similar and proximate to subject and have been considered in the market analysis. The description includes a dollar adjustment, reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the indicated value of the subject. If a significant item in the comparable is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the indicated value of the subject.

| ITEM | SUBJECT | COMPARABLE NO. 4 | +(-)$ Adjust. | COMPARABLE NO. 5 | +(-)$ Adjust. | COMPARABLE NO. 6 | +(-)$ Adjust. |
|---|---|---|---|---|---|---|---|
| Address | 19 Muskrat Lane Brewster, MA | 53 Bufflehead Lane Orleans, MA | | 24 Viking Road Orleans, MA | | | |
| Proximity to Subject | | 4.83 miles | | 3.97 miles | | | |
| Sales Price | $ Refinance | $ 2,200,000 | | $ 1,500,000 | | $ | |
| Price/Gross Living Area | $ N/A | $ 1733.65 | | $ 541.13 | | $ | |
| Data and/or | Inspection | Public Record / MLS | | Public Record / MLS | | | |
| Verification Sources | Town Hall | Banker & Tradesman | | Banker & Tradesman | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. |
| Sales or Financing | | None | | None | | | |
| Concessions | | Noted | | Noted | | | |
| Date of Sale/Time | | 6/16/2003 | | 6/12/2003 | | | |
| Location | Waterfront | Waterfront | | Waterfront/Inferior | +150,000 | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | .81 Acres | 1.12 Acres | -3,100 | .93 Acres | | | |
| View | Waterview | Waterview | | Waterview | | | |
| Design and Appeal | Ranch/ Average | Contmprary/Avg. | | Cape/Average | | | |
| Quality of Construction | Average | Average | | Average | | | |
| Age | 39 years | 39 years | | 2 years | | | |
| Condition | Good | Good | | Good | | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 4 2 2 | 8 4 3.5 | -7,500 | 9 4 4.5 | -12,500 | | |
| Gross Living Area | 1,342 Sq. Ft. | 1,269 Sq. Ft. | +1,460 | 2,772 Sq. Ft. | -28,600 | Sq. Ft. | |
| Basement & Finished | Slab | Full Bsmt. | | Full Bsmt. | | | |
| Rooms Below Grade | None | Unfinished | -20,000 | Unfinished | -20,000 | | |
| Functional Utility | Good | Good | | Good | | | |
| Heating/Cooling | Typ / None | Typ / None | | Typ/None | | | |
| Energy Efficient Items | None | None | | None | | | |
| Garage/Carport | None | None | | None | | | |
| Porch, Patio, Deck, | Deck/Porch | Deck/Porch | | Deck/Porch | | | |
| Fireplace(s), etc. | 1-Fireplace | None | +2,500 | None | +2,500 | | |
| Fence, Pool, etc. | None | None | | None | | | |
| | None | None | | | | | |
| Net Adj. (total) | | + ☒ - $ | 26,640 | ☒+ ☐ - $ | 91,400 | ☐+ ☐ - $ | |
| Adjusted Sales Price of Comparable | | $ | 2,173,360 | $ | 1,591,400 | $ | |
| Date, Price and Data | No sale in past 3 years. | No sale in the past year. | | No sale in the past year. | | | |
| Source for prior sales within year of appraisal | Town Hall | Town Hall | | Town Hall | | | |

Comments:

Market Data Analysis 6-93

Supplemental Addendum

| Borrower/Client | Donald & Elizabeth Kummerfeld | | | | |
|---|---|---|---|---|---|
| Property Address | 19 Muskrat Lane | | | | |
| City | Brewster | County | Barnstable | State | MA | Zip Code | 02631-1589 |
| Lender | Town & Country Credit | | | | |

*File No.   19mlbr*

ADDENDUM

SUBJECT PROPERTY

" COMPLETE SUMMARY APPRAISAL REPORT "

SITE

Legal Non-Conforming :

The improvements on the property do not conform to current zoning regulations. The subject is located in a RM District which has a square footage requirement of 60000 square feet and a minimum lot frontage requirement of 150'. It does not meet the guideline, but is an allowed use by a grandfather clause. In the event of loss by fire or other natural causes, the current improvements could be rebuilt without obtaining a zoning variance per the Town/City Building Department.

Highest & Best Use :

The highest and best use of the subject property " as vacant " and " as improved " are that of the subject's present use as a single family residential dwelling.

Hazardous Substances :

The value estimated in this report is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions. This appraisaer is not an expert in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of and inquiries about the subject property did not develop any information that indicated any apparent hazardous substances or detrimental environmental conditions which would affect the property negatively.

Overall Site Value :

The value of the site is greater than ( +30% ) of the total property value. This is common for this area. Some sales as well as offerings also indicate land values in excess of ( +30% ). This appraiser feels that the land value for the subject property is reasonable and normal.

SALES COMPARISON APPROACH

Sales Over 1 Mile :

In this appraiser's judgment, the lack of comparable sales in the subject neighborhood makes it necessary to use comparables that are situated over 1 mile away from the subject. These comparable sales were the best indicators of the subject's market value available at the time of this appraisal and were therefore used.

Sales Over 6 Months :

In this appraiser's judgment, the lack of comparable sales in the subject community makes it necessary to use comparables that are in excess of six months old. These comparable sales were the best indicators of the subject's market value available at the time of this appraisal and were therefore used.

Differing Styles :

In this appraiser's judgment, the lack of comparable sales in the subject neighborhood makes it necessary to use comparables of a slightly different style. These comparable sales were the best indicators of the subject market value available as of the effective date of this report and were therefore used.

ADDITIONAL COMMENTS

Appraisal Purpose :

This appraisal report is intended for use in a mortgage finance transaction only. It is not intended for any other purpose or use.

Digital Photos:

The digital photos have in no way been altered or modified.

Digital Signatures :

The signatures on this appraisal are digital signatures, which are computer generated and printed on the report. The appraisal was electronically transmitted to our office. The appraiser's signature is secured with a password which only the appraiser has access to. If any modifications were made on this appraisal, the signature would be eliminated.
The form of Certification has been approved by The Appraisal Foundation, located at 1029 Vermont Avenue, N.W., Suite 900, Washington D.C., 20005-3517. The Appraisal Foundation is authorized by Congress as the Source of Appraisal Standards and Appraiser Qualifications. This approval can be found in the Statement on Appraisal Standards number 8 (SMT-8) on Electronic Transmissions of Reports. This section regarding signed certification reads as follows :
          *Any software program used to electronically transfer a report must provide, at minimum, a digital signature security feature for all appraisers signing a report. The appraiser(s) should ensure the signature(s) are protected and that only the appraiser(s) maintain control of the signature. This control may be maintained by password (e.g. PIN numbers), hardware*

Supplemental Addendum

File No.    19mlbr

| Borrower/Client | Donald & Elizabeth Kummerfeld | | | | |
|---|---|---|---|---|---|
| Property Address | 19 Muskrat Lane | | | | |
| City | Brewster | County | Barnstable | State | MA | Zip Code | 02631-1589 |
| Lender | Town & Country Credit | | | | |

*devices (e.g. secure cards) or other means. Electronically affixing a signature to a report carries the same level of authenticity as an ink signature on a paper copy report.*

-Appraisal Standards Board, Adopted 07/18/95, Effective 01/01/96

Location Map

| Borrower/Client | Donald & Elizabeth Kummerfeld | | | | |
|---|---|---|---|---|---|
| Property Address | 19 Muskrat Lane | | | | |
| City Brewster | | County Barnstable | | State MA | Zip Code 02631-1589 |
| Lender Town & Country Credit | | | | | |



Flood Map

| Borrower/Client | Donald & Elizabeth Kummerfeld | | | |
|---|---|---|---|---|
| Property Address | 19 Muskrat Lane | | | |
| City Brewster | County Barnstable | State MA | | Zip Code 02631-1589 |
| Lender Town & Country Credit | | | | |



© 1999-2002 FloodSource Corp. U.S. Patents Pending. All rights reserved. For more information, please e-mail info@floodsource.com.

Form MAP.FLOOD — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Building Sketch (Page - 1)

Borrower/Client   Donald & Elizabeth Kummerfeld
Property Address   19 Muskrat Lane
City   Brewster                    County   Barnstable                    State   MA                    Zip Code   02631-1589
Lender   Town & Country Credit

