UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

.................................................
                                              .
**CORDIUS TRUST,**                            .
                                              .
                Plaintiff,     .
v.                                            .   C.A. NO. 04-MBD-10267
                                              .
**DONALD D. KUMMERFELD,**                     .
                                              .
                Defendant.     .
.................................................

**REDACTED MEMORANDUM IN SUPPORT OF
DEFENDANT'S RULE 62 MOTION TO STAY ENFORCEMENT OF JUDGMENT**

Defendant Donald D. Kummerfeld ("Mr. Kummerfeld") brings this motion to prevent the imminent sale of his retirement home in Brewster, Massachusetts. As discussed more fully below, plaintiff Cordius Trust ("Cordius") has registered an out-of-state judgment against Mr. Kummerfeld with this Court and now intends to conduct a sheriff's sale of a two-bedroom cottage that Mr. Kummerfeld has owned for thirty five years and had hoped to use as his permanent home upon retirement. Mr. Kummerfeld, who is 70 years old and does not have sufficient assets to post a supersedeas bond for the judgment amount of over two million dollars, has appealed the underlying New York judgment and expects that the Second Circuit will rule on the appeal (which is fully briefed) within a matter of a few months. In the meantime, Mr. Kummerfeld already is abiding by an Order of the United States District Court for the Southern District of New York that he not transfer or further encumber the property in question. Under the circumstances, it would be grossly unfair, as well as contrary to Massachusetts law, for Cordius to force a premature sale of Mr. Kummerfeld's home. Accordingly, the Court should stay further proceedings in connection with its Execution in this action.

B3028262.2

## **BACKGROUND**

Cordius' effort to evict Mr. Kummerfeld from his home is the latest chapter in long-running litigation relating to a "high yield investment" program gone wrong. Ironically, Mr. Kummerfeld himself was never involved with that program, a fact which is not at all in dispute. He is a party to this action merely because the United States District Court for the Southern District of New York pierced the corporate veil to hold him responsible for a promissory note signed by a company named Kummerfeld Associates, Inc. ("KAI"), which was run by Mr. Kummerfeld's wife, Elizabeth Kummerfeld.

A.   <u>The Original Cordius Investment and the New York Federal Court Judgment</u>

In 1997, Cordius and Mrs. Kummerfeld, on behalf of KAI, entered into an agreement under which an initial investment of $400,000 by Cordius allegedly was supposed to yield a profit of 200 percent within a matter of a few weeks.[1] Cordius received $100,000 of its original investment back in mid-1997 but the hoped-for astronomical returns never materialized. By threatening to sue, Cordius pressured Mrs. Kummerfeld (who has since been diagnosed as suffering from a progressive brain disorder) into signing a promissory note on behalf of herself and KAI for over $1.4 million in early 1999. This represented more than a four-fold increase over Cordius' remaining investment with KAI in just two years. *See Cordius Trust v. Kummerfeld*, 2004 U.S. Dist. LEXIS 5027, 2004 WL 616125 (S.D.N.Y. Mar. 30, 2004). Mr. Kummerfeld was not aware of the existence of Cordius or of the promissory note at the time. Declaration of Donald D. Kummerfeld ("Kummerfeld Decl.") at ¶ 5.

---

[1] Some of this investment may have been provided by individuals who were investors in Cordius. As Mr. Kummerfeld does not have personal knowledge about dealings between KAI and Cordius, however, this motion essentially adopts the recitation of facts set forth in *Cordius Trust v. Kummerfeld*, 2004 U.S. Dist. LEXIS 50272004 WL 616125 (S.D.N.Y. March 30, 2004). Mr. Kummerfeld expressly reserves his right to correct or revise that recitation.

Notwithstanding the fact that Mrs. Kummerfeld signed the promissory note in the hopes of avoiding litigation, Cordius promptly brought suit to enforce the note in the Federal District Court for the Southern District of New York. Four years after judgment entered in that action, Cordius persuaded the trial court (which did not hold an evidentiary hearing or even oral argument on the subject) to pierce KAI's corporate veil and find liability on the part of Mr. Kummerfeld, who owned fifty percent of KAI and was its CEO and economic lifeline but had absolutely no involvement in the underlying transaction with Cordius, since his employment contract with MAP at the time prohibited him from engaging in KAI's operations. *See Cordius Trust v. Kummerfeld*, *supra*, Exhibit A (S.D.N.Y. judgment dated April 30, 2004); Kummerfeld Decl. at ¶ 5. The $2,055,408.91 judgment that Cordius obtained against Mr. Kummerfeld represents over a seven-fold increase of Cordius' net investment with KAI.

Both Mr. Kummerfeld and his wife are subject to an order of the Southern District of New York that they not transfer or further encumber their primary asset, real property in Brewster, Massachusetts that they have owned jointly for thirty five years. *See* Exhibit B (S.D.N.Y. Order dated May 19, 2004).[2] The Kummerfelds have abided by that order and will continue doing so. Kummerfeld Decl. at ¶ 39.

B.  Massachusetts Proceedings

Following entry of judgment against Mr. Kummerfeld in New York last year, and over Mr. Kummerfeld's opposition, Cordius registered that judgment in this District and obtained an

---

[2] In issuing this Order, the trial court also denied Mr. Kummerfeld's request to stay enforcement of judgment without requiring Mr. Kummerfeld to post a bond. Among other things, the district court found that it did not have sufficient financial information before it to determine whether Mr. Kummerfeld faced a risk of irreparable injury. *See* Exhibit C (transcript of proceedings before trial court on May 19, 2004). The trial court did not address Massachusetts law in connection with its order (*see id.*), nor did the United States Court of Appeals for the Second Circuit, which likewise denied a request to stay enforcement of the district court's judgment. *See* Exhibit D (Second Circuit Order dated July 15, 2004).

Execution on September 30, 2004. *See* Exhibit E. On March 4, 2005, the Barnstable Sheriff's office informed Mr. Kummerfeld that it would proceed to a Sheriff's Sale of his equity in the property unless he satisfied this Court's judgment by April 1, 2005. *See* Exhibit F (notice).

C.  <u>Mr. Kummerfeld's Background and Current Financial Situation</u>

Mr. Kummerfeld is the current President of FIPP, an international magazine and newspaper publishers association headquartered in London. He came out of retirement to take this job, despite its grueling travel schedule, for financial reasons. From 1987 to 1999 he was President of the Magazine Publishers' Association ("MPA"), and prior to that he was President of News America (a division of News Corp.) He also was the Budget Director and First Deputy Mayor of New York City during that city's financial crisis in the mid-1970s and was a staff officer in the Executive Office of the President under Presidents Kennedy and Johnson. Notwithstanding these accomplishments, however, Mr. Kummerfeld now has only very limited assets, in large measure due to his wife's failed business ventures and, indirectly, her mental condition. *See* Kummerfeld Decl. at ¶¶ 3-4, 38.

Mrs. Kummerfeld is 72 years old and has a long history of public service and philanthropy. In the 1990s, however, she became involved in several failed business initiatives (including the one with Cordius) which essentially wiped out the couple's resources. After she became criminally implicated with an investor who had befriended and taken advantage of her (consistent with a pattern of extreme gullibility and poor judgment on her part), Mrs. Kummerfeld underwent psychiatric and neurological testing. [Text redacted

   Redacted

   Redacted                                                                                      ] Mrs.

Kummerfeld still has not been sentenced, years after her conviction, and is awaiting a hearing on competency.  Kummerfeld Decl. at ¶¶ 7-10.

In large measure due to Mrs. Kummerfeld's condition, Mr. Kummerfeld does not have sufficient assets to post a supersedeas bond in the amount of judgment in this action.  As explained more fully in the attached Declaration of Donald Kummerfeld:

- Mr. Kummerfeld's principal asset is the Brewster cottage that he and his wife jointly own and as to which they have recorded a Homestead Declaration.  That property is heavily mortgaged, with an outstanding principal of        [redacted]       and its market value is uncertain.  The property's current assessment is $1,088,100, but this reflects more than a 60% increase over the prior year's assessment and is being contested.  Although the property has been appraised at up to $1.8 million in recent years in connection with refinancing, the appraisals that potential lenders commissioned apparently did not consider development restrictions on the property.  A certified appraiser taking account of those restrictions, and identifying comparable properties, appraised the Brewster property at $820,000 in 2004.  Kummerfeld Decl. at ¶¶ 11-17 and Exhibits 3 & 4 thereto (appraisal and engineering report).

- The Kummerfelds do not own any other real property.  Mr. Kummerfeld and his wife lease an apartment in Manhattan across the street from the 59th Street Bridge, a major car and truck throughway.  *Id.* at ¶¶ 19 & 35.

- The Kummerfelds do not own any automobiles.  *Id.* at ¶ 24.

- Mr. Kummerfeld has no retirement funds and has liquidated all of his retirement accounts with the exception of one account [redacted]

-   *Id.* at ¶¶ 27-28 .

- Mr. Kummerfeld owns 50% of KAI's stock.  However, KAI (against which Cordius already has a judgment) has only limited assets and income.  The company carries

B3028262.2                                 - 5 -

receivables of $120,000 representing unsecured loans to two individuals who do not have means to repay the loans at present. *Id.* at ¶ 22.

- Mr. Kummerfeld's annual salary with FIPP is [redacted]. However, his job requires extensive travel and his contract with FIPP will expire in two years. *Id.* at ¶¶ 4 & 25.

- Other than his salary with FIPP, Mr. Kummerfeld earns only approximately [redacted] per year in consulting arrangements, and he and his wife receive approximately [redacted] annually in social security payments. *Id.* at ¶ 25.

- Mr. Kummerfeld estimates that the value of his personal effects and furniture does not exceed $60,000. *Id.* at ¶ 20.

- Mr. Kummerfeld owes over [redacted] to [redacted]. He also owes approximately [redacted] toward credit cards and [redacted] towards an overdraft loan from a bank. His mortgage, loan, insurance and tax commitments exceed [redacted] per year. *Id.* at ¶¶ 32-37.

Mr. Kummerfeld has produced tax returns, bank statements and other financial documents in connection with this Motion. *See, e.g.,* Kummerfeld Decl. at Exhibits 14 & 15 (tax returns).

As shown by the foregoing, the two-bedroom cottage at Brewster at issue in this Motion is the Kummerfelds' only option for a retirement home. Moreover, that property – which Mr. Kummerfeld purchased thirty five years ago – has great sentimental value to the larger Kummerfeld family and has been the site of family gatherings for decades. Kummerfeld Decl. at ¶ 11-12.

B3028262.2                                                       - 6 -

**ARGUMENT**

There is no reason for Cordius to force a sale of Mr. Kummerfeld's retirement home now, with an appeal of the Southern District of New York's decision to pierce KAI's corporate veil fully briefed and ready to be decided in short order. Crucially, there is no basis to suppose that the Brewster cottage – which is Mr. Kummerfeld's only major asset – is being dissipated or is losing value while the appeal is pending. To the contrary, Mr. Kummerfeld and his wife *already* are subject to the Southern District of New York's Order that they not "take any steps to further encumber the property at any time before the appeal from the judgment against [Mr.] Kummerfeld is decided or dismissed." Exhibit B. Particularly given that the $2 million judgment in this action represents a seven-fold rate of return on an investment that Cordius negotiated with an elderly woman suffering from a mental impairment, the Court should allow Mr. Kummerfeld additional time to attempt to save his home.

A.   A Sherrif's Sale Would Be Contrary to Massachusetts Law

Under Massachusetts law, "no execution shall issue during the pendency of an appeal," nor may a party take further action on an execution while an appeal is pending. G.L. c. 231, § 115; Mass. R. Civ. P. 62(a). Had Cordius brought its claims in Massachusetts state court initially, or had it sought to enforce the Southern District of New York judgment through the state courts, it would never have been able to receive an execution, much less to notice a sheriff's sale. Under the circumstances, the Court should not allow such a sale to take place now. *See* Fed. R. Civ. P. 62(f); Fed. R. Civ. P. 69; *United States v. Home Indemnity Co.*, 549 F.2d 10 (1977) (rule providing that judgment debtor is entitled to such stay of execution as would be accorded him had the action been maintained in state court is applicable in proceeding to register judgment of another district court).

B.   The Court Should Stay Further Proceedings Pursuant to Federal Rule 62(d)

Even if the Court were to find that Rule 62(f) is not applicable here (a point upon which the Southern District and the Second Circuit have not passed), the Court still should exercise its broad discretion to prevent Mr. Kummerfeld from losing his retirement home while his appeal is pending. A defendant-appellant who appeals an adverse judgment can stay the enforcement of the judgment as a matter of right by posting a supersedeas bond pursuant to Fed. R. Civ. P. 62(d). Although a supersedeas bond may be for the full amount of the judgment, this Court has discretion to reduce the amount of the bond or, indeed, to issue a stay without any bond whatsoever. As the Court of Appeals for the District of Columbia has explained, "the Rule [Fed. R. Civ. P. 62] does not limit the district court's power to issue unsecured stays through an exercise of its sound discretion." *Federal. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980); *Rivera Perez v. Mass. Gen. Hosp.*, 193 F.R.D. 43, 45 (D.P.R. 2000).

In this case, no supersedeas bond is necessary because Mr. Kummerfeld has complied with the District Court for the Southern District of New York's order not to transfer or encumber the property and he has sworn to continue to abide by the order. If the Court believes some additional security is in order, Cordius could easily use the judgment and execution issued by this Court to simply record a lien against the property *without* prematurely forcing a sale of Mr. Kummerfeld's retirement home. Such a lien, in conjunction with Mr. Kummerfeld's pledge and the Southern District of New York's order, would adequately secure Cordius's interest in the property pending the outcome of the appeal without the need for title to change hands or the posting of a bond.

To the extent this Court were to consider requiring Mr. Kummerfeld to post additional collateral (which would be contrary to Massachusetts law given the pendency of Mr. Kummerfeld's appeal), "[t]he nature and the amount of the bond is entrusted to the discretion of the trial court." *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002). One factor considered by courts to determine the nature and amount of the bond is whether obtaining a bond would create an undue financial hardship on the debtor. *See Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979) ("[I]f the judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden, the court . . . is free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection to the judgment creditor.").[3]

For example, in *Bowers v. Baystate Technologies, Inc.*, 2001 WL 640876, 1 (D. Mass. 2001) (attached as Exhibit G), Judge Gorton approved an alternative form of security because the defendant-appellant could not afford to post a supersedeas bond for the full judgment. Instead, the defendant-appellant was required to post a cash bond worth one-tenth the value of the judgment, pledge stock, and comply with certain conditions designed to preserve the value of the

---

[3] Other factors include (a) whether the appellee is likely to prevail on the merits of his appeal, (b) whether the appellee may be irreparably injured without a stay, (c) whether other parties interested in the proceedings will be "substantially" harmed, and (d) wherein lies the public intrust. *Hilton v. Braunskill*, 481 U.S. 770, 777, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1984). With respect to the likelihood of success on the merits, Mr. Kummerfeld incorporates by reference his appellate brief, attached hereto as Exhibit H. With respect to irreparable injury, Mr. Kummerfeld stands to lose unique real property which has incalculable sentimental value to him and his family. *See* Kummerfeld Decl. at ¶ 12. Moreover, Mr. Kummerfeld has no assurance that Cordius has sufficient assets to undo even the purely economic damage that Mr. Kummerfeld would suffer if the property is sold and his appeal later succeeds. *Id.* at ¶ 6. With respect to harm to Cordius, by contrast, there is no reason to believe that the property's value is likely to decline, and Cordius already is protected by a court order that Mr. and Mrs. Kummerfeld not dissipate any equity in the property. Finally, with respect to public interest, the public policy objectives adopted in G.L. c. 231, § 115 -- which prevents execution and eviction while an appeal is pending -- should be controlling here.

defendant's assets.  Subsequently, Judge Gorton eliminated the cash bond requirement altogether because the defendant demonstrated that posting the cash bond "could well lead to Baystate's demise." *Bowers*, 2001 WL 640876 at 1.

Here, Mr. Kummerfeld cannot post a bond for the judgment amount, and attempting to do so would likely force him into bankruptcy.  The Court should not force him into the position of declaring bankruptcy or losing his retirement home while a fully-briefed appeal is pending.  At most, the Court should consider requiring Mr. Kummerfeld to obtain a bond for the value of the equity in the property, which is heavily leveraged.  Given the Order of the Southern District of New York preventing further encumbrance of the property, however, nothing further is needed to maintain the status quo during the appeal, which is all Mr. Kummerfeld requests.

WHEREFORE, the Court should stay any further proceedings for enforcement of the Execution in this matter and should schedule a hearing on this matter as soon as convenient for the Court.

                                        Respectfully submitted,

                                        DONALD D. KUMMERFELD,
                                        By his attorneys,

                                        /s/  Jeffrey S. Follett
                                        FOLEY HOAG LLP
                                        Jeffrey S. Follett, BBO #564337
                                        Michael Martin, BBO #653876
                                        Foley, Hoag LLP
                                        155 Seaport Boulevard
                                        Boston, MA 02210
                                        *jfollett@foleyhoag.com*

Dated:  May 12, 2005                        (617) 832-1000